**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0419n.06
Filed: July 15, 2008

**No. 06-1920**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROSEMARIE McSWAIN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| SUSAN DAVIS, WARDEN, | ) | |
| | ) | |
| Respondent-Appellee, | ) | |

**BEFORE: SUHRHEINRICH and ROGERS, Circuit Judges; and BELL, Chief District Judge.**[*]

**BELL, District Judge**. Rosemarie McSwain, a Michigan prisoner proceeding *pro se*, appeals the district court's order dismissing her petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 as time-barred. For the reasons stated herein we affirm.

**I. BACKGROUND**

On April 19, 1988, Rosemarie McSwain, who was working as a prostitute, killed one of her customers. On October 28, 1988, following a jury trial, she was convicted of first-degree premeditated murder and sentenced to life in prison without the possibility of parole.[1]

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

[1]McSwain was convicted of first degree murder in violation of Mich. Comp. Laws § 750.316(1)(a) and possession of a firearm during the commission of a felony in violation

The Michigan Court of Appeals affirmed her convictions, *People v. McSwain*, No. 115067 (Mich. Ct. App. Oct. 8, 1990), and the Michigan Supreme Court denied leave to appeal, *People v. McSwain*, No. 90408 (Mich. June 28, 1991).

On August 13, 1998, almost ten years after her conviction, McSwain filed a motion for relief from judgment in state court based on newly discovered evidence. McSwain alleged that she had recently been diagnosed with Dissociative Identity Disorder ("DID"), formerly known as multiple personality disorder, a mental illness that she had likely been suffering from since childhood. She alleged, based upon this diagnosis, that she had been incompetent to stand trial and lacked criminal responsibility at the time of the crimes for which she was convicted, and that information about her mental disability had not been available or discoverable at the time of her trial or her appeal.

After conducting an evidentiary hearing the state post-conviction trial court found that if the evidence of McSwain's DID had been presented to the judge and/or jury at the time of trial, there was a substantial likelihood that she would have been declared incompetent, and there was a reasonable likelihood that the jury would have decided the case differently. The court accordingly found that McSwain had met the cause and prejudice requirements of Michigan Court Rule 6.508(D)(3), and granted McSwain's motion for a new trial. *People v. McSwain*, No. 88-45197-FC (Kent Co. Cir. Ct. Aug. 21, 2002).

---

of Mich. Comp. Laws § 750.227b.

On December 9, 2003, the Michigan Court of Appeals reversed the order granting a new trial. *People v. McSwain*, 676 N.W.2d 236 (Mich. Ct. App. 2003). The Michigan Court of Appeals concluded that although McSwain had presented significant evidence of her current mental condition, her experts could only speculate that she suffered from DID at the time of her trial and that her mental condition at the time of the trial was such that she did not understand the charges against her and could not knowingly assist in her defense. *Id.* at 255-57. The court of appeals accordingly held that McSwain had failed to show prejudice, and that the district court had abused its discretion in granting the order for a new trial. *Id.* at 257. The Michigan Supreme Court denied further review on September 16, 2004. *People v. McSwain*, No. 125546, 688 N.W.2d 499 (Mich. Sept. 16, 2004) (Table). McSwain filed her federal habeas petition on September 14, 2005. On March 20, 2006, Respondent-Appellee Susan Davis, Warden (hereinafter "the State") moved to dismiss the petition because it was not timely. Two months later, having received no response to the motion, the district court granted the motion to dismiss because McSwain's petition was time-barred under 28 U.S.C. § 2244(d): it was not filed before April 24, 1997 (the expiration of the one-year grace period after the effective date of AEDPA); McSwain did not present newly-discovered evidence; McSwain did not make a showing that her mental incompetence rendered her unable to file her habeas petition within the one-year limitations period; and McSwain had neither alleged nor established that she is actually innocent. *McSwain v. Davis*, No. 05-CV-7345-DT, slip op. at 3-6 (E.D. Mich. May 23, 2006). The district court

also denied a certificate of appealability. *Id.* at 7. McSwain submitted her untimely[2] *pro se* response to the motion to dismiss two days after the district court dismissed her petition. At that time she also filed a motion for appointment of counsel and for an evidentiary hearing. McSwain did not file a motion for reconsideration of the order dismissing her habeas petition.

McSwain appealed the dismissal of her habeas petition. We granted a certificate of appealability limiting the issues for review to (1) whether McSwain's habeas petition was timely pursuant to 28 U.S.C. § 2244(d)(1)(D); and (2) whether McSwain's subsequent diagnosis of DID rendered her incompetent to stand trial.

## II. Analysis

McSwain contends that the district court erred in dismissing her habeas petition. She asserts that her habeas petition was timely filed, or, in the alternative, that she is entitled to equitable tolling either because her mental illness prevented her from filing the petition in a timely manner, or because she has raised a credible claim of actual innocence.

### A. The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a one-year limitations period for habeas petitions brought by prisoners challenging state-court convictions. 28 U.S.C. § 2244(d); *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007),

---

[2]Local rules require a response to a dispositive motion to be filed within 21 days after service of the motion. ED Local Rule 7.1(d)(1)(B).

*cert. denied*, 128 S. Ct. 1236 (2008).  The limitations period begins to run from the latest of

four enumerated events.[3]  28 U.S.C. § 2244(d)(1).  McSwain relies on the fourth of these

events: "the date on which the factual predicate of the claim or claims presented could have

been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

---

[3] Section 2244(d) states in relevant part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  Prisoners whose convictions became final prior to April 24, 1996, the AEDPA's effective date, had a one-year grace period in which to file their federal habeas petitions.  *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003).

We review a district court's dismissal of a habeas petition as time-barred under the *de novo* standard of review, but we review the district court's factual findings for clear error. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005).

McSwain contends that her federal habeas petition was timely filed because it was filed less than one year after the conclusion of her state post-conviction proceedings. Her contention that the one-year limitations period for newly discovered evidence commences at the conclusion of the state post-conviction proceedings does not find support in the statute. The statute clearly provides that the one-year period shall be measured from the time the new evidence "could have been discovered through the exercise of reasonable diligence." 28 U.S.C. § 2244(d)(1)(D). It provides for tolling only while the state review is "pending." 28 U.S.C. § 2244(d)(2). A state petition for post-conviction review tolls, but does not restart AEDPA's one-year statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (holding that a state petition for post-conviction review claiming ineffective assistance of appellate counsel tolls, but does not restart, AEDPA's one-year statute of limitations, and rejecting the argument that the state petition restarted the clock because it was part of the direct review process); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("[A]lthough the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion."). A fair reading of § 2244(d)(1)(D) requires us to find that the time that elapsed between the discovery of the new evidence and the commencement of state post-conviction proceedings

as well as the time that elapsed after the conclusion of the state post-conviction proceedings must both be factored into the calculation of the one-year limitations period.

McSwain contends that the new evidence ( the factual predicate of her habeas claim) was her diagnosis with DID. Calculation of the limitations period accordingly requires us to determine the date on which McSwain's mental illness could have been discovered through reasonable diligence.

The district court determined that McSwain's habeas petition was not timely under § 2244(d)(1)(D) because McSwain's mental illness was not newly-discovered evidence. *McSwain v. Davis*, slip op. at 4. According to the district court, McSwain and/or her counsel were aware of facts which could have supported a mental incompetency defense at the time of trial, and they could have reasonably discovered her potential mental illness prior to the expiration of the one-year limitations period. *Id.* (citing *McSwain*, 259 Mich. App. at 687).

The district court's determination that McSwain's mental illness was not newly-discovered evidence is not supported by the record. The state post-conviction trial court determined that McSwain had shown good cause for not raising the issue of her mental illness earlier. The Michigan Court of Appeals questioned the trial court's good cause finding, but ultimately did not find it necessary to determine whether the trial court's factual findings on the good cause requirement were clearly erroneous. *McSwain*, 676 N.W.2d at 253. Accordingly, the issue of whether McSwain's mental illness could have reasonably been discovered at the time of her trial was not resolved against her by the Michigan courts.

Although McSwain contends that she has suffered from DID since childhood, she contends that she did not discover her mental illness until 1998. The record is silent as to why McSwain did not discover her mental illness earlier, or what prompted her, in 1997, to obtain the mental health evaluations that resulted in her DID diagnosis. Multiple personality disorder, the former name for DID, has been classified as a dissociative disorder by the American Psychiatric Association since 1987. *McSwain*, 676 N.W.2d at 240. Because McSwain has failed to establish "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), she did not meet her burden of establishing that her mental illness was newly-discovered evidence.

Nevertheless, for purposes of the present analysis, we will assume that McSwain's DID diagnosis was newly discovered evidence. The evidence of record indicates that McSwain was evaluated by Steven R. Miller, Ph.D., L.P., a licensed psychologist and certified forensic examiner, on three occasions in March 1997, and by Leslie K. Pielack, M.A., a certified social worker and licensed professional counselor, in May and June 1997. Dr. Miller concluded in his report dated February 5, 1998, that McSwain suffers from DID, that he had substantial doubt that she was competent to stand trial in 1988, and that she would have been legally insane at the time of committing the crimes for which she was convicted. Ms. Pielack reported on August 15, 1997, and again on February 27, 1998, that McSwain met the criteria for DID.

For purposes of our analysis we will assume that the earliest date on which McSwain could have reasonably discovered the mental illness that forms the factual predicate of her habeas claim was February 5, 1998, when Dr. Miller's report confirmed Ms. Pielack's August 15, 1997 diagnosis. We nevertheless are compelled to find that McSwain's habeas petition was not timely. If the one-year limitations period started on February 5, 1998, it had run for over six months before it was tolled by the filing of McSwain's state post-conviction proceedings on August 13, 1998. Accordingly, McSwain had less than six months from the conclusion of her state post conviction proceedings on September 16, 2004, to file her § 2254 petition. Because McSwain did not file her federal petition until September 15, 2005, a year after the conclusion of her state-post conviction proceedings, and more than six months after the one-year statutory limitations period had expired, her petition was untimely.       **B    .**

**Traditional Equitable Tolling Based on Mental Disease**

McSwain contends that even if her petition was not timely, she should be entitled to equitable tolling of the limitations period.

"[W]here the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

Because AEDPA's one-year statute of limitations is not jurisdictional, the one-year limitations period in § 2255 is subject to the doctrine of equitable tolling. *Souter*, 395 F.3d

at 588; *Allen*, 366 F.3d at 401(citing *Dunlap*, 250 F.3d at 1007). The doctrine of equitable

tolling permits the court to excuse late-filed habeas claims in appropriate circumstances.

*McCray*, 499 F.3d at 571 (citing *Souter*, 395 F.3d at 588). In determining whether equitable

tolling is appropriate we consider the following factors:

> (1) lack of actual notice of filing requirement; (2) lack of constructive
> knowledge of filing requirement; (3) diligence in pursuing one's rights; (4)
> absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in
> remaining ignorant of the notice requirement.

*Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (quoting *Andrews v. Orr*, 851 F.2d 146,

151 (6th Cir.1988)). "[T]hese factors 'are not necessarily comprehensive or always relevant;

ultimately every court must consider an equitable tolling claim on a case-by-case basis.'"

*Keenan*, 400 F.3d at 421 (quoting *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004)). "In

essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations

when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from

circumstances beyond that litigant's control.'" *Id.* (quoting *Graham-Humphreys v. Memphis

Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). *See also Pace v.

DiGuglielmo*, 544 U.S. 408, 418 (2005) (stating that equitable tolling is available when the

petitioner can demonstrate "(1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way"). We have repeatedly cautioned that

equitable tolling should be granted "sparingly." *Solomon v. United States*, 467 F.3d 928, 933

(6th Cir. 2006); *Cook v. Stegall* 295 F.3d 517, 521 (6th Cir. 2002); *Dunlap*, 250 F.3d at

1008-09; *see also Keenan*, 400 F.3d at 420 ("Equitable tolling is permissible under the [AEDPA], although rare." (quoting *King*, 378 F.3d at 553)).

Although the initial burden of raising the statute of limitations defense is on the state, the burden of proof is on the habeas petitioner to persuade the court that he or she is entitled to equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

The district court determined that McSwain failed to meet her burden of establishing entitlement to equitable tolling because she did not set forth any circumstances, either in her habeas petition or in response to the state's motion to dismiss, which allegedly caused her to institute her state court collateral proceedings after the expiration of the one-year limitations period. *McSwain v. Davis*, slip op. at 5. The district court noted that mental incompetence could provide a possible basis for tolling the limitations period, but rejected it in this case because it is not a *per se* reason to toll the statute of limitations and McSwain did not meet her burden of showing that her mental health problems rendered her unable to file a habeas petition within the limitations period. *Id.* at 5-6.

Although the mental incapacity of the petitioner can warrant the equitable tolling of the statute of limitations, the district court properly determined that mental incompetence is not a *per se* reason to toll a statute of limitations. *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part on other grounds by Carey v. Saffold*, 536 U.S. 214, (2002); *Lake v. Arnold*, 232 F.3d 360, 371 (3d Cir. 2000). In order to be entitled to equitable tolling

the petitioner must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected her ability to file a timely habeas petition. *See Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) ("Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled."); *Nara*, 264 F.3d at 320 ("[T]he alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition."); *Nowak v. Yukins*, 46 F. App'x 257, 259 (6th Cir. 2002) (holding that the incapacity of the petitioner can warrant the equitable tolling of the statute of limitations where the petitioner makes a threshold showing of incompetence and demonstrates that the incompetence affected her ability to file a timely habeas petition).

The record contains substantial evidence to support McSwain's assertion that she suffers from a mental illness, but it does not contain evidence to support a causal connection between her mental illness and her ability to file a timely federal habeas petition. Indeed, the record evidence indicates McSwain was able to pursue both direct and collateral challenges to her conviction in the state courts notwithstanding her mental illness. *See Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005) (disallowing equitable tolling on the basis of mental incapacity where the habeas petitioner had pursued state court litigation even during the periods when her mental condition was the most impaired); *Price v. Lewis*, 119 F. App'x 725, 726-27 (6th Cir. 2005) (disallowing equitable tolling based on mental illness

where the habeas petitioner had actively pursued his claims during the limitations period).

Although McSwain was represented by an attorney in the state court proceedings and is

currently proceeding *pro se*, this is a distinction without significance in light of the fact that

McSwain was also represented by an attorney at the time she filed her federal habeas petition,

as evidenced by the fact that her federal habeas petition was prepared and signed by an

attorney.

Moreover, McSwain has not alleged any facts that would suggest that her mental

illness prevented her from timely filing her habeas petition. She indicated in her untimely

response to the motion to dismiss that she believed her petition was timely because it was

filed within one year of the conclusion of her state post-conviction proceedings. She did not

assert that she was prevented from filing it in a timely manner because of her mental illness.

McSwain's misunderstanding as to when the limitations period began does not support

equitable tolling of § 2244(d). "'[I]gnorance of the law alone is not sufficient to warrant

equitable tolling.'" *Griffin*, 399 F.3d at 637 (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th

Cir. 1991)). This is so even for incarcerated *pro se* habeas petitioners. *Jagodka v. Lafler*,

148 F. App'x 345, 347 (6th Cir. 2005) (per curiam). Even if McSwain's misunderstanding

was the result of incorrect advice from her attorney, "a petitioner's reliance on the

unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling."

*Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (citing *Jurado v. Burt*, 337 F.3d 638,

644-45 (6th Cir.2003)).

We conclude that McSwain has not met her burden of establishing that she is entitled to equitable tolling on the basis of her mental illness.

**C. Evidentiary Hearing on Equitable Tolling for Mental Illness**

McSwain contends that because the district court dismissed her habeas petition before it received her response to the motion to dismiss, she is entitled, at a minimum, to an evidentiary hearing on the issue of whether her mental illness prevented her from timely filing her habeas petition. In support of this argument she directs us to other cases where courts have remanded for an evidentiary hearing on equitable tolling where the record contained evidence of mental illness but no evidence that the mental illness affected the petitioner's ability to present his or her habeas petition. *See Laws*, 351 F.3d at 924-25; *Nara*, 264 F.3d at 320.

McSwain did not raise the issue of equitable tolling on the basis of her mental illness in a timely response to the motion to dismiss. *Cf. Laws*, 351 F.3d at 923 (noting that the petitioner had alleged, in a sworn pleading, that he was incompetent in the years when his petitions should have been filed). Even when she did file her late response to the motion to dismiss and made reference to her mental illness, she did not assert that she was prevented from timely filing either her habeas petition or her response to the motion to dismiss because of her mental illness. She merely indicated that because she has been suffering from DID since childhood, she "likely suffers periods of incompetency which would effect her ability to file a timely habeas petition." McSwain's speculation about the impact of her mental

illness on her ability to timely file her habeas petition is not sufficient to warrant an evidentiary hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, --- U.S. ---, 127 S. Ct. 1933, 1940 (2007); *see also Hartman v. Bagley*, 492 F.3d 347, 361 (6th Cir. 2007) (denying a request for a remand where the petitioner had not alleged sufficient facts to warrant an evidentiary hearing), *cert. denied*, --- S. Ct. ---, 2008 WL 1843917 (June 23, 2008). Because McSwain has not alleged any facts, which, if true, would show that her mental illness prevented her from timely filing her habeas petition once she became aware of her DID diagnosis, she is not entitled to a hearing on this issue.

Furthermore, in the motion for an evidentiary hearing filed contemporaneously with her response to the motion to dismiss, McSwain did not request a hearing for the purposes of submitting evidence to explain how her mental illness affected her ability to timely file her habeas petition. She merely requested an evidentiary hearing on the issue of competency to stand trial. McSwain's suggestion, raised for the first time on appeal, that she might be able to produce some evidence that her mental illness prevented her from timely filing her habeas petition lacks a sufficient factual basis to warrant an evidentiary hearing.

### D. Equitable Tolling for Actual Innocence

McSwain contends that even if her mental illness does not excuse her delay in filing her habeas petition, she is nevertheless entitled to equitable tolling based upon her claim of

actual innocence.

In *Souter* we held that a credible claim of actual innocence could provide an additional basis for equitable tolling of the § 2244(d)(1) statute of limitations. 395 F.3d at 602. In determining whether a petitioner has met the requirements for establishing a cognizable claim of actual innocence for purposes of equitable tolling, we apply the actual-innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), for reviewing a federal habeas petitioner's procedurally defaulted claim. *McCray*, 499 F.3d at 571 (citing *Souter*, 395 F.3d at 596). Under this standard "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. In determining whether a petitioner has met this standard we consider all the evidence, without regard to its admissibility. *House v. Bell*, 547 U.S. 518, 538 (2006). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id*. (quoting *Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *Id.* (quoting *Schlup*, 513 U.S. at 327).

The district court held that Petitioner was not entitled to equitable tolling on the basis

of actual innocence because she had not alleged actual innocence in her § 2255 petition nor had she established that she was actually innocent. *McSwain v. Davis*, slip op. at 6.

Because equitable tolling based upon a claim of actual innocence involves the interpretation of the evidence as a whole and its likely effect on reasonable jurors, it is primarily a question of law on which we do not defer to the district court's judgment. *House*, 547 U.S. at 539-40. We accordingly review the district court's refusal to apply equitable tolling based on actual innocence under the *de novo* standard of review.

The key question for our determination is whether the new evidence of McSwain's mental illness, together with the evidence presented at trial, establishes that it is more likely than not that no reasonable juror would have found McSwain guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327; *McCray*, 499 F.3d at 572.

McSwain bears the burden of demonstrating that, in light of the new reliable evidence, it is more likely than not that no reasonable jury would find her guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327; *Souter*, 395 F.3d at 590, 598-99. McSwain is not claiming that she did not kill the victim. Rather, her actual innocence claim is based on her assertion that she was not guilty by reason of her insanity.

To prevail on an insanity defense under Michigan law, McSwain would have to show that, as a result of her mental illness, she lacked substantial capacity either to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law. Mich. Comp. Laws § 768.21a(1).

For purposes of demonstrating that she has a credible claim of innocence, McSwain

relies on the evidence she submitted at the evidentiary hearing held in her state post-conviction proceedings. The record contains testimony from three mental health experts who concluded that McSwain suffered from DID at the time of their evaluations in 1997 and 1998, and that she began developing DID during her childhood. Dr. Gregory Miklashek, a practicing psychiatrist at Forest View Psychiatric Hospital in Grand Rapids, Michigan, testified that DID is difficult to diagnose, that it needs to be distinguished from malingering, and that DID sufferers can make rational and critical decisions in some areas. He testified that McSwain does not suffer from "full-blown DID," but that he did not believe that McSwain was malingering, and that he would be "flabbergasted" if her DID had not been ongoing since her abuse began at approximately age three. Dr. Miller testified that because it is likely that McSwain suffered from DID from childhood, there was a "very high probability" that she suffered from DID in 1988, that she was not competent to stand trial, and that she was not legally responsible for the crime. Ms. Pielack testified that McSwain's DID impairment was "severe" and that based on her diagnosis that McSwain had DID in 1997, the "likelihood is very good" that she had the disease in 1988.

McSwain's close friend and fellow inmate, Debra Carathoni, testified that McSwain was subject to changes in her personality and demeanor, but that she could communicate with McSwain even when she was in different personalities or demeanors. McSwain testified about her abusive childhood, but she did not testify about the murder or the trial. The only testimony McSwain produced relating to the time of her trial was the testimony of her trial

counsel, Thomas Parker. Mr. Parker testified that when he first met McSwain she was shy and pleasant, but that his subsequent meetings with her were very different because she was forward, brazen and brassy. McSwain told Mr. Parker that she did not commit the murder, but she offered him no other information to assist in her defense. According to Mr. Parker, McSwain appeared to understand that she was being tried for first degree murder and was able to discuss the issue of whether or not she should testify. Mr. Parker testified that he had significant experience in defending clients with mental health problems, but that there was nothing about McSwain's behavior that suggested to him that she suffered from a mental illness. He accordingly did not request a competency examination. Mr. Parker testified that when McSwain was questioned by the trial court on her decision not to testify, she did not appear to be confused and she responded appropriately to the court's questions.

The State offered the testimony of Dr. Arthur Marroquin, a doctor of clinical psychology. Dr. Marroquin spent over six hours with McSwain and reviewed police reports, trial transcripts, and records of McSwain's previous psychiatric treatments. Dr. Marroquin testified that McSwain told him that she had provided her trial attorney with names of witnesses to call and that she had discussed a plea bargain with him. Dr. Marroquin noted that at her criminal trial McSwain had responded appropriately to questions by the court regarding her decision not to testify. Dr. Marroquin found no indication of dissociative disorders, much less DID. He concluded that McSwain was not mentally ill and that she was competent to stand trial when he interviewed her, as well as at the time of trial in 1988.

The Michigan Court of Appeals held that the opinion testimony of McSwain's experts regarding her mental condition in 1988 was "at best speculative and at worst after-the-fact extrapolation," and that their opinion testimony on her competency to stand trial in 1988 was "purely speculative." *McSwain*, 676 N.W.2d at 255-56. We agree that the evidence McSwain is relying on in support of her actual innocence claim lacks reliability. None of McSwain's experts had reviewed the transcript of her 1988 trial or the police reports from that time before reaching their conclusion that she suffered from DID ten years before. Dr. Miller opined on the ultimate issue of McSwain's lack of competency and criminal responsibility without articulating the basis for his opinion, even though he acknowledged that persons with DID can be competent to stand trial, that McSwain was currently competent to stand trial, that there was nothing strange or unusual in McSwain's colloquy with the trial court about her decision not to testify, and that he had not reviewed either the trial transcript or police records before reaching his conclusion.

The Supreme Court held that the gateway actual innocence standard had been met in *House* where new DNA evidence undermined the central forensic proof connecting House to the murder and House put forward substantial evidence pointing to a different suspect. 547 U.S. at 554. We held that the gateway actual innocence standard had been met in *Souter* where the petitioner presented compelling proof that a bottle, the only direct evidence linking him to the death, could not have caused the victim's injuries. 395 F.3d at 596-97.

In contrast to the circumstances found in *House* and *Souter*, McSwain has not met her burden of showing that this is one of those extraordinary cases where a credible claim of

actual innocence has been established by new reliable evidence. The evidence McSwain has presented does not raise sufficient doubt about her guilt nor does it undermine confidence in the result of her trial. The available evidence, viewed in its totality, does not compel a conclusion that McSwain was legally insane at the time of the murder. A reasonable juror could easily discount the opinions of McSwain's experts in their entirety. A reasonable juror could alternatively accept the experts' opinion that she suffered from DID in 1988, but nevertheless reject the conclusion that her disease rendered her legally insane. We cannot say that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. We conclude that McSwain has not met her threshold burden of showing she has a credible claim of actual innocence. Accordingly, McSwain is not entitled to equitable tolling on the basis of actual innocence and her habeas claim must be rejected as time-barred.

**E. Evidentiary Hearing on Equitable Tolling for Actual Innocence**

McSwain contends that if we are not convinced, on the present record, that she is entitled to equitable tolling, we should nevertheless vacate the district court's decision and remand for an evidentiary hearing on her request for equitable tolling on the basis of her actual innocence. *See Jaramillo v. Stewart*, 340 F.3d 877 (9th Cir. 2003) (remanding for an evidentiary hearing where the petitioner had alleged newly discovered evidence of actual innocence that, if credible, would excuse the procedural default); *Jones v. United States*, 153 F.3d 1305, 1308 (11th Cir. 1998) (remanding for a hearing to determine whether the

petitioner could avoid the procedural bar under the actual innocence standard where the present record did not clearly resolve the issue).

The State contends that McSwain's request for an evidentiary hearing must be denied because McSwain had an opportunity to develop the factual basis for her actual innocence claim in state court and "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). The State, citing *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004), contends that McSwain is limited to the evidence presented in the State court hearing.

*Williams* and *Holland*, the cases relied on by State, involved the application of 28 U.S.C. § 2254(e)(2).[4] "Ordinarily, a petitioner must satisfy the conditions imposed by 28

---

[4]Section 2254(e)(2) provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

    (A) the claim relies on--

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(continued...)

U.S.C. § 2254(e)(2) before being granted a hearing to augment the evidentiary basis for a

claim." *Cargle v. Mullin*, 317 F.3d 1196, 1208 (10th Cir. 2003). The Supreme Court has

held, however, that § 2254(e)(2) does not address "a first federal habeas petition seeking

consideration of defaulted claims based on a showing of actual innocence," and that the

standard of review in § 2254(e)(2) does not apply to an actual innocence claim. *House*, 547

U.S. at 539 (holding that the *Schlup* "more likely than not" standard applied to an actual

innocence claim rather than the "clear and convincing" standard § 2254(e)(2)). As noted by

the Third Circuit, § 2254(e)(2)'s use of the term "claim" applies to "a substantive request for

the writ of habeas corpus" rather than to an excuse for procedural default. *Cristin v.

Brennan*, 281 F.3d 404, 418-19 (3d Cir. 2002). *See also Vineyard v. Dretke*, 125 F. App'x

551, 554 (5th Cir. 2005) (noting that § 2254(e)(2) "does not appear to address scenarios like

the one in the instant case, in which the factual dispute concerns not a substantive

constitutional claim but the federal court's application of a nonconstitutional rule").


We agree with McSwain that because equitable tolling is a defense to a federal statute

---

[4](...continued)
> (B) the facts underlying the claim would be sufficient to establish by
> clear and convincing evidence that but for constitutional error, no
> reasonable factfinder would have found the applicant guilty of the
> underlying offense.

28 U.S.C. § 2254(e)(2).

of limitations applied to a federal habeas petition, it would not generally make sense to require a petitioner to develop the factual basis of her equitable tolling argument in state court proceedings. Accordingly, it may frequently be appropriate to require the district court to hold an evidentiary hearing to enable a procedurally-barred habeas petitioner to develop the factual record necessary to support equitable tolling under the actual innocence standard. This is not such a case, however, because the factual basis of McSwain's equitable tolling argument (actual innocence) is the same as the factual basis of her substantive habeas claim (actual innocence). McSwain's equitable tolling and her substantive habeas claim both rely on a showing that she suffered from a mental disease in 1988 that rendered her incompetent to stand trial and/or legally insane. McSwain had a full and fair opportunity and substantial incentive to develop the facts in support of her substantive habeas claim at the evidentiary hearing in state court.

McSwain has not suggested that her request for equitable tolling on the basis of actual innocence relies on a different factual basis than her substantive habeas claim. Although the Michigan Court of Appeals considered competency to be the central issue and did not address insanity, McSwain argued both competency and insanity at the state post-conviction evidentiary hearing and presented the same proofs in support of both issues.

McSwain did submit additional proofs to the federal district court in conjunction with her late response to the motion to dismiss. These proofs include the expert reports of Dr. Miller and Ms. Pielack, and affidavits from Mr. Parker and Dr. Adelson. These proofs

were not considered by the district court because they were not received by the Court before it ruled on the motion to dismiss.  Nevertheless, we have considered these proofs and find that they are consistent with the testimony and evidence produced at the state court evidentiary hearing.  They do not add anything of substance that was not already before the district court and do not suggest the need for a further evidentiary hearing.

Having determined that McSwain's habeas petition is subject to dismissal because it was not timely and was not subject to equitable tolling, we decline to address the second question certified for appeal, i.e., whether McSwain's diagnosis with DID rendered her incompetent to stand trial.

### III.  CONCLUSION

For the reasons stated, we **AFFIRM** the judgment of the district court dismissing McSwain's habeas claims as time-barred.