NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0287n.06
Filed: April 16, 2009

No. 08-3723

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MIRASH PEPAJ; RITA PEPAJ; EVA PEPAJ; NIKO PEPAJ, | ) ) ) | |
| **Petitioners,** | ) ) | **ON PETITION FOR REVIEW** FROM THE BOARD OF |
| v. | ) ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., United States Attorney General, | ) ) ) | **O P I N I O N** |
| **Respondent.** | ) ) ) | |

**Before: BOGGS, Chief Judge; MOORE and SUTTON, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Petitioners Mirash Pepaj, Rita Pepaj, Eva Pepaj, and Niko Pepaj (collectively, the "Pepajs"), natives and citizens of Albania, seek review of a decision of the Board of Immigration Appeals ("BIA") denying their untimely motion to reopen their removal proceedings under 8 C.F.R. § 1003.2. The Pepajs argue that the BIA abused its discretion when it denied their request to equitably toll the time limit for their motion to reopen. The Pepajs did not file their motion to reopen until March 31, 2008, more than seven years after the BIA dismissed their initial appeal as untimely on June 14, 2000. Although the Pepajs contend that they did not learn that their appeal had been dismissed and that their counsel's performance had been deficient until March 2005, they still waited more than three years to file the motion to reopen with

the BIA. Because we conclude that the BIA did not abuse its discretion in denying equitable tolling on the ground that the Pepajs did not exercise due diligence, we **DENY** the petition for review.

## I. BACKGROUND

Mirash Pepaj entered the United States on March 5, 1995, as a nonimmigrant visitor. He was later joined by his wife, Rita, and children, Eva and Niko, in September and October of 1997. Mirash subsequently applied for asylum and withholding of removal, listing his wife and children as derivative applicants. On March 25, 1998, an asylum officer with the former Immigration and Naturalization Service ("INS") referred the asylum application to an immigration judge ("IJ"). After a merits hearing on March 24, 2000, the IJ denied asylum and withholding of removal and ordered the Pepajs deported to Albania. Although a Notice of Appeal must be filed with the BIA within 30 days of an IJ's decision (in this case by April 24, 2000), the Pepajs' counsel did not file a Notice of Appeal until May 12, 2000. The BIA therefore dismissed the appeal for lack of jurisdiction in an opinion dated June 14, 2000.

The government does not dispute that the Pepajs received ineffective assistance of counsel in their 1998–2000 asylum proceedings. In 1997, the Pepajs retained attorney Valerie Yaeger, who practiced immigration law in Michigan before being suspended by the State Bar of Michigan on December 20, 2000. Yaeger accompanied Mirash and Rita Pepaj to their interview with the INS asylum officer in 1998. Yaeger brought an interpreter to that interview, but the interpreter did not speak the same dialect of Albanian as the Pepajs. Yaeger also told the asylum officer at the interview that she would submit certain missing documents that were awaiting translation. However, unknown to the Pepajs at the time, Yaeger never submitted the documents. Both Yaeger—who subsequently acknowledged her deficient performance—and Rita Pepaj attribute the asylum officer's

2

decision to refer the asylum application to an immigration judge to Yaeger's failure to submit the promised documentation. Joint Appendix ("J.A.") at 53 (Yaeger Aff. at 1); J.A. at 35 (Rita Pepaj Letter at 1).

Yaeger continued to represent the Pepajs at the merits hearing before the IJ on March 24, 2000. Although Yaeger's father, Noel Lippman, acted as lead counsel at the hearing, Yaeger remained the primary attorney on the case and was responsible for document preparation and obtaining a competent translator. Again, however, Yaeger's performance was deficient. According to both Rita Pepaj and Yaeger, the IJ rejected several key documents at the hearing because of translation problems, and the translator at the hearing intentionally made translation errors because of alleged personal animosity toward Yaeger. After the IJ denied asylum and withholding of removal on March 24, 2000, the Pepajs asked Yaeger to file an appeal with the BIA. The Pepajs (as well as Yaeger's father, whose name was now on the case as counsel) believed that Yaeger had properly perfected an appeal of the IJ's decision. However, Yaeger missed the thirty-day deadline to file a Notice of Appeal by more than two weeks, and never submitted a brief to the BIA. J.A. at 53 (Yaeger Aff. at 1); J.A. at 35 (Rita Pepaj Letter at 1).[1]

---

[1]Yaeger was suspended from the practice of law by the State Bar of Michigan on December 20, 2000, but continued to work as a "legal assistant" for her father—who took over Yaeger's practice—before relocating to California in 2002. In March 2005, Yaeger agreed to a stipulated order of discipline by the State of Michigan's Attorney Discipline Board in which she pleaded no contest to a number of allegations, including failure to notify clients and courts of her suspension, failure to file pleadings, and failure to notify clients of hearings, to list a few. Under the disciplinary order, Yaeger was required to pay restitution to various former clients and given a two-year term of probation effective upon her reinstatement to practice law in Michigan.

According to the Pepajs, they did not learn that their appeal had been dismissed by the BIA (and that their counsel had been ineffective) until March 2005.[2] On March 4, 2005, the Pepajs filed a request for an investigation of Yaeger with the State of Michigan's Attorney Grievance Commission. In an attached letter, Rita Pepaj detailed Yaeger's various errors during the interview with the asylum officer and the merits hearing before the IJ and explained that Yaeger had recently confessed to her that Yaeger had not perfected an appeal with the BIA. In a March 7, 2005, affidavit, Yaeger admitted the errors described by Rita Pepaj and conceded that her representation of the Pepajs before the asylum officer, the IJ, and the BIA was ineffective.

More than three years later, on March 31, 2008, the Pepajs filed a motion to reopen their removal proceedings with the BIA.[3] The Pepajs argued that the BIA should reopen their case under 8 C.F.R. § 1003.2(c) based upon the newly discovered evidence of ineffective assistance of counsel. The Pepajs also asked the BIA to exercise its sua sponte discretion to reopen the case under 8 C.F.R. § 1003.2(a).

On May 20, 2008, the BIA denied the Pepajs' motion to reopen. Noting that the motion was filed more than seven years after the BIA dismissed the appeal, the BIA concluded that the motion was untimely under the ninety-day deadline of 8 U.S.C. § 1229a(c)(7)(C)(i) and 8 C.F.R.

---

[2]The government suggests that the Pepajs learned that their appeal had been dismissed as untimely sometime before March 2005, when they went to Lippman's office to inquire about their case. We, like the BIA, will assume for purposes of this appeal that the Pepajs did not learn that their appeal was dismissed until March 2005.

[3]Eva Pepaj, now an adult and not eligible for derivative asylum, filed a separate motion to reopen and asked that her case be severed from her parents' cases. Because, however, the cases were primarily based on the same ineffective-assistance claims, the BIA treated the motions to reopen as one. The BIA stated that even though Eva, like her mother Rita, had an approved employment-based I-140 visa petition, that did not require it to sever the cases.

§ 1003.2(c)(2) (providing that, with certain exceptions not relevant here, a motion to reopen must be filed within ninety days of a final administrative order of removal). The BIA refused to apply equitable tolling to excuse the Pepajs' failure timely to file, finding that the Pepajs did not exercise due diligence in filing the motion to reopen after learning that they had received ineffective assistance of counsel. The BIA assumed that the Pepajs did not learn that their appeal had been dismissed and that their counsel had been ineffective until March 2005. Still, the BIA concluded, the Pepajs waited more than three years to file the motion to reopen. Additionally, the BIA ruled that the Pepajs had failed to show "exceptional circumstances" that would warrant the exercise of its sua sponte authority to reopen the proceedings. The Pepajs timely filed a petition for review.

## II. ANALYSIS

It is undisputed that the Pepajs' March 2008 motion to reopen their removal proceedings was untimely and that the Pepajs' counsel was ineffective. The sole question presented is whether the BIA abused its discretion by refusing to equitably toll the ninety-day filing deadline for the motion to reopen. "We review the BIA's denial of a motion to reopen under an abuse-of-discretion standard." *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008). Applying this standard, we consider whether the BIA's denial of the motion "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (internal quotation marks omitted).

"Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (internal quotation marks omitted) (alteration in original). "We previously have applied the doctrine of

5

equitable tolling to otherwise time-barred motions to reopen." *Barry*, 524 F.3d at 724. We also have recognized that "[e]quitable tolling may apply when a petitioner has received ineffective assistance of counsel." *Id.* (internal quotation marks omitted). In determining whether to equitably toll an otherwise time-barred motion to reopen, we consider the following five factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.* (internal quotation marks omitted).

Here, the BIA concluded that the Pepajs did not establish that they exercised due diligence in filing the motion to reopen after discovering that Yaeger had provided ineffective assistance of counsel. We agree. We previously have held that waiting fifteen months to file a motion to reopen after learning of counsel's ineffective assistance shows a lack of due diligence. *Tapia-Martinez*, 482 F.3d at 424. Even assuming, as did the BIA, that the Pepajs did not learn that their appeal had been dismissed (and that their counsel was ineffective) until March 2005, the Pepajs still waited more than three years to file a motion to reopen with the BIA. The Pepajs offer no real explanation for this three-year delay, nor any grounds for distinguishing this case from *Tapia-Martinez*.

The Pepajs argue that the BIA erred because it relied solely upon the diligence factor and did not address the other four equitable-tolling factors articulated by this court. However, our precedents do not suggest that the BIA must address all five factors. Indeed, we previously have denied equitable tolling when the petitioner's only error was a failure to exercise due diligence. *See Barry*, 524 F.3d at 725 (denying equitable tolling for lack of diligence where the petitioner "did not inquire about her immigration status for approximately one year despite having actual knowledge that the

6

BIA dismissed her case, and, after learning of the need to file a motion to reopen, she waited over three months to file"); *Tapia-Martinez*, 482 F.3d at 424 (denying equitable tolling for lack of due diligence where petitioner "did not file a motion alleging ineffective assistance by Yaeger until fifteen months after she discovered Yaeger's deficient performance").

The Pepajs also point to their efforts under the alternative immigration route of employment-based visas.[4] They argue that these efforts demonstrate the requisite diligence in pursuing their rights and that it was reasonable for them to, among other things, "wait for their labor certifications process to conclude" before filing their motion to reopen. Pepajs Br. at 10. However, we fail to see how the Pepajs' apparent diligence in the employment-based-visa context excuses their lack of diligence in pursuing their asylum and withholding-of-removal claims. Regardless of alternative avenues of relief potentially available, a petitioner must exercise due diligence in pursuing a motion to reopen or else equitable tolling will not be available. By March 2005 the Pepajs were aware that their appeal to the BIA had been dismissed and that Yaeger had provided ineffective representation. Yet, without explanation, they did not file a motion to reopen alleging ineffective assistance until March 2008.

In sum, the BIA did not abuse its discretion in finding that the Pepajs failed to exercise due diligence because they did not file a motion to reopen alleging ineffective assistance against Yaeger until more than three years after they discovered Yaeger's deficient representation. Accordingly, we cannot say that the BIA abused its discretion in declining to equitably toll the time period for the Pepajs to file their motion to reopen.

---

[4]Both Rita Pepaj and Eva Pepaj have obtained approved I-140 petitions.

7

### III.  CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.