**Matilde Florintina RAMIREZ–MATIAS, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

No. 14–4056.

United States Court of Appeals, Sixth Circuit.

Nov. 24, 2015.

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge.

Matilde Florintina Ramirez–Matias seeks review of a decision of the Board of Immigration Appeals ("BIA") denying her motion to reopen her case. Ramirez–Matias illegally entered the United States in September 2000. An Immigration Judge

("IJ") ordered her removed from the country in September 2002. The BIA affirmed that decision in July 2003. Ramirez–Matias filed her motion to reopen over a decade later in June 2014. The BIA rejected the motion as untimely. Ramirez–Matias argues that the BIA should have equitably tolled the relevant statute of limitations. For the reasons set forth below, we **DENY** the petition.

## I. BACKGROUND

Ramirez–Matias is a thirty-seven-year-old native and citizen of Guatemala. I–589 Application at 1 (A.R.393). In a declaration attached to her motion to reopen, Ramirez–Matias recounts how her parents fled their hometown of Todos Santos Cuchumatan, Huehuetenango after the Todos Santos massacre in 1982, leaving Ramirez–Matias and her brother Jorge with adoptive parents. Decl. of Matilde Florintina Ramirez Matias ("Decl.") at 1 (A.R.382). Ramirez–Matias trained to be an accountant; Jorge, a teacher. *Id.*

In 1998, Ramirez–Matias and her common law husband, Mariano Pablo Matias, had their first child: Jayson. *Id.* at 1–2 (A.R.382–83). At the end of that year, Mariano left Guatemala for the United States, and Ramirez–Matias began working at a small bank in Todos Santos. *Id.* at 2 (A.R.383).

Her troubles started soon thereafter. In the summer of 1999, a police officer entered Ramirez–Matias's bank and threatened to kill her. *Id.* at 3 (A.R.384). She thought this was a joke. *Id.* But the threats continued. *Id.* at 3–4 (A.R.384–85). And one night in November, while Ramirez–Matias walked home from work alone, two police officers apprehended her, accused her family of being guerrillas, and raped her. *Id.* at 4 (A.R.385).

Ramirez–Matias stayed in Guatemala: she felt that she had achieved a position of prominence in her community and refused to abandon it. *Id.* But the police continued threatening her. *Id.* at 4–5 (A.R.385–86). In August 2000, a police officer in a car ran over Jayson, then two years old. 9/26/02 Oral Decision of the Immigration Judge ("9/26/02 Oral Decision") at 5 (A.R.51). He died after a five-day hospital stay. Decl. at 5 (A.R.386). The police department maintained that the officer who killed Jayson had been drunk and that Jayson's death was an accident. *Id.* Ramirez–Matias believes that it was an intentional attempt to "torture" her. *Id.*

Mariano returned to Guatemala to investigate his son's death. *Id.;* 9/26/02 Oral Decision at 5 (A.R.51). The police reacted swiftly. Officers raped Ramirez–Matias again, telling her that they would kill her if Mariano continued his investigation. Decl. at 5–6 (A.R.386–87). And in late August, Mariano received multiple phone calls from people threatening to kill him and Ramirez–Matias if he continued probing Jayson's death. *Id.* at 6 (A.R.387). It was then that Ramirez–Matias felt she had to flee Guatemala. *Id.*

Ramirez–Matias and Mariano illegally entered the United States through El Paso on September 10, 2000. 9/26/02 Oral Decision at 2 (A.R.48); Notice to Appear (Matilde Florintina Ramirez–Matias) at 1 (A.R. 463). They were arrested that day and received Notices to Appear, charging them as removable aliens under 8 U.S.C. § 1182(a)(6)(A)(i). 10/5/00 IJ Hr'g Tr. at 2 (A.R.59); Notice to Appear (Mariano Pablo-Matias) at 1 (A.R.358); Notice to Appear (Matilde Florintina Ramirez-Matias) at 1 (A.R.463). The two appeared at a hearing before an IJ in El Paso on October 12, 2000, and, through an accredited representative, conceded removability and admitted the factual allegations in their

Notices to Appear. 10/12/00 Hr'g Tr. at 4–5 (A.R.62–63).

The couple then moved to Michigan, where Ramirez–Matias gave birth to her second child, Ashley, in August 2001. Birth Certificate (A.R.164). They retained another accredited representative, Matthew Monroe. Decl. at 7 (A.R.388). But Monroe never asked Ramirez–Matias about *her* reasons for fleeing Guatemala; he spoke only to Mariano. *Id.* And Ramirez–Matias—afraid that her husband might blame her for being sexually assaulted—never disclosed the fact that she had been raped. *Id.* at 6 (AR.387).

Mariano filed an Application for Asylum and Withholding of Removal on January 25, 2002, seeking withholding under the Immigration and Nationality Act ("INA"), protection under the Convention Against Torture ("CAT"), and asylum. Application for Asylum and for Withholding of Removal at 1, 5, (A.R.135, 139). He listed Ramirez–Matias as a derivative beneficiary.[1] *Id.* at 2 (A.R.136). But Ramirez–Matias did not testify at the September 26, 2002 merits hearing on that Application. 9/26/02 Hr'g Tr. (A.R.82). The IJ rejected the Application in an oral decision and ordered Ramirez–Matias and Mariano to return to Guatemala. 9/26/02 Oral Decision at 8–9 (A.R.54–55).

Mariano and Ramirez–Matias appealed to the BIA. Notice of Appeal at 1 (A.R.35). The BIA dismissed their appeal in a written decision on July 29, 2003. 7/29/03 BIA Decision at 1–2 (A.R.2–3). Three months later, Ramirez–Matias's brother Jorge was murdered in Guatemala; she claims that witnesses report that police killed him. Decl. at 8 (A.R.389). Ramirez–Matias recalls that she "was a complete wreck" after her brother's death. *Id.* In June 2004,

Mariano returned to Guatemala, leaving Ramirez–Matias in the United States. *Id.*

Over the following decade, Ramirez–Matias made periodic attempts to pursue her immigration case. She avers that in 2007, while visiting family in Oakland, California, she visited the East Bay Sanctuary Covenant, who referred her to an attorney who "didn't care about [her] case." Decl. at 9 (A.R.390). Ramirez–Matias moved to Oakland in July 2010, where she gave birth to her third child, Gloria, in August. *Id.* She renewed her efforts to find legal assistance in California, but because it "ha[d] been so long" since the BIA's decision she "was rejected everywhere [she] went." *Id.* at 10 (A.R.391). It was not until March 26, 2014, that Ramirez–Matias found her current counsel. *Id.*

On June 27, 2014—nearly eleven years after the BIA rejected her and Mariano's appeal—Ramirez–Matias filed a motion to reopen her case on the ground of ineffective assistance of counsel. Resp. Mot. to Reopen at 2 (A.R.373). Because she filed well after the INA's ninety-day deadline, Ramirez–Matias requested equitable tolling. *Id.* at 2, 6–7 (A.R.373, 377–78); *see* 8 U.S.C. § 1229a(c)(7)(C)(i). In support of this request, Ramirez–Matias alleged that between 2003 and 2014 she "was psychologically impaired"; she claimed that she suffered from "PTSD, Major Depressive Disorder and Persistent Complicated Bereavement Disorder." Resp. Mot. to Reopen at 7 (A.R.378). In light of those conditions, Ramirez–Matias argued, she had "acted with all due diligence" in pursuing her immigration case and was thus entitled to equitable tolling. *Id.* Ramirez–Matias attached three documents to her motion: (1) a declaration in which she

1. This was an error: As the Government notes, "the [INA] does not permit derivative withholding of removal under any circumstances." *In Re A–K–,* 24 I. & N. Dec. 275, 279 (BIA 2007).

recounted her personal history; (2) a completed I–589 Application seeking asylum, withholding of removal, and CAT protection; and (3) a psychological evaluation completed by a California social worker who interviewed Ramirez–Matias in April 2014. *Id.* at 2 (A.R.373).

On September 30, 2014, the BIA denied Ramirez–Matias's motion to reopen in a written decision. 9/30/14 BIA Decision at 1 (A.R.365). "A petitioner seeking equitable tolling," the BIA wrote, "must establish due diligence." *Id.* "Due diligence," it added, "requires an alien to prove that the delay in filing the motion to reopen was due to an exceptional circumstance beyond his control." *Id.* (quoting *Tapia–Martinez v. Gonzales*, 482 F.3d 417, 423 (6th Cir. 2007)). Although the BIA noted that Ramirez–Matias's life had been "tragic," it observed that she had nonetheless raised children, traveled across the country, and "otherwise live[d] her life in the United States." 9/30/14 BIA Decision at 1 (A.R. 365). Over the course of roughly a decade, it wrote, Ramirez–Matias had "attempted to contact several attorneys." *Id.* In turn, the BIA concluded that Ramirez–Matias had failed to prove that her "decade long delay in filing the motion was due to an exceptional circumstance beyond her control." *Id.* Ramirez–Matias then timely filed her petition for review.

## II. ANALYSIS

Both parties agree that Ramirez–Matias filed her motion to reopen after the INA's ninety-day deadline. Pet'r Br. at 9; Resp. Br. at 13. And both agree that in denying that motion, the BIA concluded that Ramirez–Matias had failed to demonstrate "due diligence" without reaching the merits of her ineffective assistance claim. Pet'r Br. at 10–11; Resp. Br. at 12 n. 4. Ramirez–Matias argues that that conclusion was erroneous. We disagree.

"We review the BIA's denial of a motion to reopen under an abuse-of-discretion standard." *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir.2008); *see* 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section."). "We will find an abuse of discretion where 'denial of [the] motion to reopen ... was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination.'" *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir.2008) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir.2005)). This is a high bar: "Because the BIA has such broad discretion, a party seeking reopening ... bears a 'heavy burden.'" *Barry*, 524 F.3d at 724 (quoting *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir.2007)).

In general, "a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). But "[w]here an alien seeks to reopen a time-barred motion, the doctrine of equitable tolling may be applied to permit reopening when the alien demonstrates that she received ineffective assistance of counsel and was prejudiced thereby." *Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir.2010).

"To determine whether to apply equitable tolling to time-barred claims, we generally consider five factors that include: '(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the

respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.'" *Barry*, 524 F.3d at 724 (quoting *Ajazi v. Gonzales*, 216 Fed.Appx. 515, 518 (6th Cir. 2007)). The BIA focused on this third factor—diligence—in rejecting Ramirez–Matias's request for equitable tolling. We do the same. *See Pepaj v. Holder*, 321 Fed.Appx. 468, 472 (6th Cir.2009) ("Indeed, we previously have denied equitable tolling when the petitioner's only error was a failure to exercise due diligence.").

To determine whether a petitioner has been diligent, we "look[ ] to whether … [she] could reasonably have been expected to file the motion to reopen earlier." *Cifuentes–Calderon v. Holder*, 535 Fed.Appx. 490, 491 (6th Cir.2013). Timing is important. We consider whether a petitioner seeking equitable tolling exercised due diligence "*before* learning the status of his appeal … [and] *after* the petitioner learned of the need to file a motion to reopen." *Mezo*, 615 F.3d at 621 (internal quotation marks and citations omitted). But we also recognize that "the mere passage of time—even a lot of time—before an alien files a motion to reopen does not necessarily mean she was not diligent." *Gordillo v. Holder*, 640 F.3d 700, 705 (6th Cir.2011). Accordingly, we have held that "[d]ue diligence requires an alien to prove that the delay in filing the motion to reopen was due to an exceptional circumstance beyond his control." *Barry*, 524 F.3d at 724 (internal quotation marks omitted).

The question before us, then, is narrow: did the BIA abuse its discretion by determining that Ramirez–Matias was not diligent and refusing to equitably toll her filing deadline? We conclude that it did not.

Ramirez–Matias argues that her "diagnosed medical and psychological impairments is an exceptional circumstance beyond her control." Pet'r Br. at 11. The psychological report she appended to her motion to reopen reveals that she suffers from PTSD, Major Depressive Disorder, and Persistent Complex Bereavement Disorder. Psychological Evaluation at 4 (A.R. 421). But she cites no case law discussing whether such impairments can constitute an "exceptional circumstance" that would justify equitably tolling the INA's statute of limitations.

In the habeas context, we recognize "that a petitioner's mental incompetence" can constitute "an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir.2011). A showing of mental incompetence alone, however, is not enough. Rather, before we will equitably toll AEDPA's statute of limitations, we require a petitioner to demonstrate *both* that: "(1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Id.* at 742; *see McSwain v. Davis*, 287 Fed.Appx. 450, 456–57 (6th Cir.2008) (declining to equitably toll AEDPA's statute of limitations where record evidence established petitioner's mental illness but did not establish that illness caused petitioner to miss filing deadline).

We think that this requirement of "a causal link," *Ata*, 662 F.3d at 742, proves fatal for Ramirez–Matias's request for equitable tolling. The BIA was correct: the facts of Ramirez–Matias's life—her sexual assaults, her child's death, her brother's murder—are tragic. And we do not doubt that those tragedies have caused her great psychological suffering. But "[i]llness—mental or physical—tolls a statute of limitations only if it *actually prevents* the sufferer from pursuing his legal rights during the limitations period." *Price v. Lewis*,

119 Fed.Appx. 725, 726 (6th Cir.2005) (emphasis added). In turn, "[t]he exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity." *Id.* (citation omitted). Such is the case here.

Ramirez–Matias argues that the fact that she "sought legal assistance on multiple occasions" is a testament to her "diligence" in the face of overwhelming personal obstacles. Pet'r Br. at 13–14. To the contrary, we agree with the BIA that her periodic efforts to obtain legal help cut against her. From 2003 through 2014, Ramirez–Matias reached out to a number of attorneys—in multiple states—to discuss her immigrant status. That those efforts proved unsuccessful does not change the fact that Ramirez–Matias repeatedly attempted to pursue her legal claims over the course of a decade. This suggests that Ramirez–Matias's psychological impairments did not, in fact, *prevent her* from timely filing her motion to reopen.

Accordingly, we conclude that the BIA did not abuse its discretion when it determined that Ramirez–Matias failed to demonstrate that her psychological impairments constituted an "exceptional circumstance" that would warrant equitable tolling.

## III. CONCLUSION

For the reasons set forth above, we **DENY** the petition for review.