RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MUZAFFER ATA,

               *Petitioner-Appellant,*

    *v.*

DEBRA SCUTT, Warden,

               *Respondent-Appellee.*

No. 09-1522

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-13849—Nancy G. Edmunds, District Judge.

Argued: July 28, 2011

Decided and Filed: November 28, 2011

Before: GIBBONS, STRANCH, and ROTH, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Daniel N. Jabe, JONES DAY, Columbus, Ohio, for Appellant. Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Daniel N. Jabe, Carrie M. Lymanstall, JONES DAY, Columbus, Ohio, for Appellant. Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

## OPINION

_____

JANE ROTH, Circuit Judge. Muzaffer Ata appeals the district court's dismissal of his petition for writ of habeas corpus. Ata contends that the district court improperly granted the State of Michigan's motion for summary judgment on statute of limitations

_____

[*]The Honorable Jane R. Roth, Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

grounds because, at a minimum, his motion for equitable tolling required an evidentiary hearing. In support of his petition and his motion for equitable tolling, Ata alleged that the existence of his serious and protracted mental illness prevented him from timely filing. In his petition, his motion, and their supporting documents, he provided specific allegations of his long history of severe mental illness and the effect on his mental capacity of this illness and of the medications he took for it. We conclude, therefore, in light of these detailed factual allegations, that the district court should have granted Ata an evidentiary hearing to determine whether these allegations are true, and if so, whether they entitle Ata to equitable tolling. *See Schriro v. Landrigan*, 550 U.S. 465, 474-75 (2007). Accordingly, we vacate the order of the district court and remand this case for such a hearing. *See McSwain v. Davis*, 287 F. App'x 450, 456-58 (6th Cir. 2008) (not for publication) (quoting *Schriro*, 550 U.S. at 474).

## I. Background

### A. The Crime

On the afternoon of September 24, 1995, Ata asked his neighbors, Terri Holland and her daughter, if they needed anything from the store. Ata and Holland were on good terms. Ata occasionally ran errands for her and she occasionally offered him food. Holland asked Ata to buy a few items at the store and gave Ata approximately $20.00 for the purchases. When Ata returned from the store, an argument broke out between Holland, her daughter, and Ata. He had bought some items that Holland had not requested and he also gave her incorrect change.[1] Holland's son, Rodney Westbrook, was in the house. On hearing the argument, Westbrook came out onto the front porch. He asked what was wrong and requested that Ata keep his voice down. Westbrook then went back into the house. Shortly thereafter Ata left the front porch. A few minutes later, Holland and her daughter saw Ata running toward them with a rifle. Ata began shooting in their direction. The daughter ran back into the house and told Westbrook that Ata was shooting at them. Westbrook came to the front door, and Ata shot him

---

[1] Ata's medical records indicate that he had trouble with numbers, and in particular could not perform simple subtraction.

several times, killing him. Ata then ran back to his apartment, remaining there for several hours until he surrendered to the authorities. After his arrest, Ata confessed to the police. He recounted his argument with Holland and her daughter and described how Westbrook had confronted him, telling him to lower his voice and to leave. Ata believed that Westbrook was implying that Ata had not given the correct change and further that Ata "was a sissy." Ata also felt threatened: "I didn't see any gun, but I knew he had one by the way he got in my face." [2]

### B. Trial and Appeals

After his arrest, the Recorder's Court, City of Detroit (now the Wayne County Circuit Court) assigned counsel for Ata and ordered Ata to undergo a mental examination to determine his competency. At a hearing on January 18, 1996, Ata was found incompetent to stand trial and was sent to a state psychiatric facility. Ata's counsel initially indicated that Ata would raise an insanity defense. Following nearly a year at the facility, however, a state psychiatrist found Ata competent to stand trial, competent at the time of his statement to police, as well as capable of forming the intent necessary to commit premeditated murder. Later, a court-appointed independent examiner also found Ata competent, and Ata's counsel withdrew the insanity defense.

Ata waived his right to a jury trial, opting for a bench trial. At trial, Ata's counsel argued that Ata was guilty of manslaughter, not intentional murder, because, in the few minutes between the altercation and the shooting, Ata did not have enough time to "cool" in order to form the necessary mens rea. The trial court convicted Ata of intentional murder and of possession of a firearm at the time of the commission of a felony.

At sentencing, Ata's counsel expressed his "firm belief that Mr. Ata, due to his long term mental illness, was not responsible for his actions," and that Ata is "in desperate need of mental and extensive psychiatric treatment." The trial court imposed a mandatory life sentence without the possibility of parole for the murder conviction and

---

[2] Ata's counsel acknowledges that Westbrook had only a minor role in the disagreement and that nothing in the record suggests Westbrook actually had a gun.

a two-year sentence for the firearm conviction. The court noted that a clinical report classified Ata as suffering from "schizophrenia paranoid type in remission in an individual who displays passive-aggressive tendencies, mal-depression and non-compliance with medical treatment." However, the court found that Ata's mental issues "did not, according to the clinicians, rise to the level of useable defense." Nevertheless, the court endeavored to send Ata's psychiatric assessment to the Department of Corrections in the hope that Ata would receive treatment while incarcerated.

Ata was appointed appellate counsel and appealed his conviction. The Court of Appeals affirmed. Ata then sought leave to file an appeal with the Michigan Supreme Court. This was denied on January 31, 2000. Ata did not petition for writ of certiorari to the United States Supreme Court.

### C. State Post-Conviction Proceedings

On May 2, 2006, Ata filed a motion for post-conviction relief with the state trial court. In the motion, Ata claimed that his trial counsel was constitutionally ineffective for failing to assert an insanity defense and that his post-arrest confession was involuntary due to his mental incompetence. On December 18, 2006, the trial court rejected both grounds on the merits and denied Ata's motion. Ata applied for leave to file a delayed appeal. The Michigan Court of Appeals denied leave on October 24, 2007. Ata's petition to appeal to the Michigan Supreme Court was denied on April 28, 2008.

The record developed in Ata's post-conviction proceedings included medical documents reflecting a history of mental illness, including numerous hospitalizations prior to incarceration and a diagnosis of paranoid schizophrenia. Documents, which dated from the 1970s, show that Ata had once threatened to kill his family, that he was delusional and paranoid, and that, while at times cooperative and friendly, he could also quickly become agitated and hostile.

**D. Federal Habeas Proceedings**

On September 8, 2008, Ata, proceeding *pro se*, filed his first federal habeas petition in the United States District Court for the Eastern District of Michigan. His federal habeas petition asserted the same grounds he had claimed in his state petition: ineffective assistance of counsel and the involuntariness of his confession.

Because his petition would be time barred by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Ata at the same time filed a motion for equitable tolling. In the motion, Ata asked the district court to equitably toll the AEDPA one-year statute of limitations because his mental incompetence had prevented him from timely filing his petition. Ata alleged that he was mentally incompetent, citing a lengthy history of psychiatric disorders and treatment. Ata also alleged that he had "missed the [filing] deadline because he had been hospitalized on numerous occasions for paranoid schizophrenia and other psychoses. These mental ailments . . . disabled him in terms of being able to be percipient of notices of filing requirements or changes in the *habeas* law pursuant to the [AEDPA]." Ata further alleged that he "missed the deadline because he has been and continues to be medicated by the Michigan Department of Corrections (MDOC) for paranoid schizophrenia and other psychoses." In the affidavit attached to his equitable tolling motion, Ata averred that "due to my mental incapacitation I did not understand the one-year limitation placed on *habeas* petitioners." Ata's affidavit also stated that "I have made every attempt known to me and my reasoning and understanding to facilitate any appeals before any court and to diligently prepare my appeal. I have not forsook any opportunity to present my appeal."

Under the section of the motion entitled "Relief Requested," Ata asked that the District Court, if it deemed it necessary, grant him an evidentiary hearing.

The State moved for summary judgment and dismissal of the habeas petition. The State argued that, because Ata had failed to show that he was incompetent during the five year period before the statute of limitations expired and because he provided only unsupported and conclusory claims, he was not entitled to equitable tolling.

Eight days later, without waiting for a response from Ata, the District Court granted the State's motion for summary judgment, denied Ata's motion for equitable tolling, and dismissed Ata's habeas petition. The court concluded that Ata "failed to establish that he was incompetent during all or even a significant portion of the over five years he allowed to lapse before the limitations period expired." The court explained that Ata "provides only unsupported and conclusory allegations," and that "[e]ven if [Ata] had certain mental ailments in the past, he has failed to meet his burden of establishing that the alleged impairments affected his ability to file a timely habeas petition." The court also found that Ata "failed to establish that he diligently pursued his rights," noting that Ata did not seek state post-conviction relief until five years after the AEDPA limitations period had expired and that he filed his federal habeas petition over four months after state appellate review of his post-conviction motion. Finally, the District Court denied Ata a certificate of appealability.

Five days later, Ata filed his response to the State's motion for summary judgment. In it, Ata argued that if it "properly consider[ed] his mental status . . . , this Court should not be hard pressed to find that, to the best of his ability Mr. Ata 'diligently pursued' his rights. The five year period between the State Supreme Court's decision and the filing of the motion is mainly attributable to Mr. Ata being prescribed debilitating medications, which can be construed as a State-imposed impediment, his placement in residential treatment units within the MDOC, and his general paranoia."

Ata filed a notice of appeal and an application to proceed *in forma pauperis* with the district court. The district court construed Ata's notice and application as a motion for reconsideration. It denied both in an April 28, 2009, order as it found neither presented an issue on which the court had not already ruled. On November 25, 2009, this Court granted Ata's application for a certificate of appealability and his motion to proceed *in forma pauperis*.

## II.  Standard of Review

Generally, we review a district court's decision to deny an evidentiary hearing for an abuse of discretion.  *See Reynolds v. Bagley*, 498 F.3d 549, 552 (6th Cir. 2007). While we review *de novo* the decision of the district court to deny equitable tolling as a matter of law or where the facts are undisputed, "in all other cases, we apply the abuse of discretion standard."  *Dunlap v. United States*, 250 F.3d 1001, 1007 &  n.2 (6th Cir. 2001).

## III.  Discussion

The sole contested issue on appeal is whether Ata sufficiently alleged in his motion for equitable tolling that his mental incompetence prevented him from timely filing his habeas petition so that he was entitled to an evidentiary hearing to resolve his tolling claim.

### A.  Equitable Tolling of AEDPA's Statute of Limitations

AEDPA's one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances.  *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).  However, a petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010) (quoting *Holland*, 130 S. Ct. at 2560-62).  We have indicated that equitable tolling should be applied "sparingly," *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006), and decided on a "case-by-case basis," *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005).[3]  Further, although "the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run," the petitioner bears the ultimate burden of persuading the court that he

---

[3]In light of the recent holding in *Holland*, the factors we previously considered to determine whether equitable tolling is appropriate, *see Dunlap v. United States*, 250 F.3d 1001, 1008-10 (6th Cir. 2001), only remain relevant to the extent they may inform the Supreme Court's two-part analysis, *see* 130 S. Ct. at 2562.  *See also Robinson v. Easterling*, 424 F. App'x 439, 442 & n.1 (6th Cir. 2011).

or she is entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

### B. Equitable Tolling for Mental Incompetence

The parties agree with our conclusion in *McSwain v. Davis* that mental incompetence or incapacity may provide a basis for equitable tolling. 287 F. App'x 450, 456 (6th Cir. 2008). *McSwain* is not binding on us, but we find its reasoning persuasive and consistent with the standard applied in other circuits.[4] *See* 287 F. App'x at 456; *see also Riva v. Ficco*, 615 F.3d 35, 39-40 (1st Cir. 2010); *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002); *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999); *Laws v. Lamarque*, 351 F.3d 919, 923-24 (9th Cir. 2003); *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009); *see generally* 16A Federal Procedure, Lawyers Ed. § 41:351. Accordingly, we now hold that a petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations. To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations. In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required. *See McSwain*, 287 F. App'x at 456.

### C. The Requirement of an Evidentiary Hearing

The parties agree with our use in *McSwain* of the standard set forth in *Schriro*, 550 U.S. at 474, to determine whether a prisoner is entitled to a hearing on his motion for equitable tolling. 287 F. App'x 458. In *Schriro*, the Supreme Court addressed the

---

[4]We have recognized this rule in other circuits' caselaw, *see Robertson*, 624 F.3d at 785, and in other non-precedential opinions, *see, e.g.*, *Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005); *Price v. Lewis*, 119 F. App'x 725, 726-27 (6th Cir. 2005); *Nowak v. Yukins*, 46 F. App'x 257, 259 (6th Cir. 2002).

considerations a federal court must undertake "[i]n deciding whether to grant an evidentiary hearing" in connection with a habeas petition. 550 U.S. at 474. The Court began its analysis by noting that both prior to and following the enactment of AEDPA, the decision to grant an evidentiary hearing is "generally left to the sound discretion of district courts." *Id.* at 473. The Court concluded that "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."[5] *Id.* at 474. But "if the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Concerned with the potential for frivolous hearings, the Court found necessary a review of the state court record to determine if the allegations were refuted by it. *Id.* at 475.

Thus, the holding in *Schriro*, as it is to be applied by a district court in determining whether mental incompetence supports tolling, directs the court to determine if the factual allegations are sufficient to support equitable tolling and to review the state court record in order to establish whether petitioner's assertions are refuted by the record or otherwise without merit. Although an evidentiary hearing need not be provided as a matter of right, an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file.[6] *See McSwain*, 287 F. App'x at 457-58; *accord Hunter*, 587 F.3d at 1309-10 (finding petitioner's allegations that "mental retardation prevented him from understanding his rights and obligations under the AEDPA and acting upon them in a timely fashion" which was corroborated by a pre-trial medical evaluation indicating mental incapacity, required an evidentiary hearing on petitioner's equitable tolling claim).

---

[5] Although AEDPA contains additional restrictions on a federal court granting an evidentiary hearing in a state prisoner's habeas proceeding, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), those restrictions do not apply to the equitable tolling issue before us.

[6] If petitioner has not met this standard, it is of course discretionary with the district court whether or not to hold a hearing.

**D.      Whether Ata's Motion for Equitable Tolling Required an Evidentiary Hearing**

The State does not contest that Ata has made a threshold showing of mental incompetence.  However, the State does argue, citing *McSwain*, 287 F. App'x. at 457, that Ata's "conclusory" assertions are insufficient to warrant an evidentiary hearing because they do not allege a "causal connection" between his illness and failure to file on time.  We agree that Ata must establish such a causal connection.  We conclude, however, that he has sufficiently set out the facts and the causal connection in his petition so that he is entitled to a hearing.

**1. Ata's Allegations Are Sufficiently Specific**

To reach this conclusion, the first step in our analysis is to determine whether Ata's factual allegations, accepted as true, show that he is mentally incompetent and that his mental incompetence prevented him from timely filing his petition.  *See McSwain*, 287 F. App'x at 458 (quoting *Schriro*, 550 U.S. at 474).

The district court refused to accept Ata's allegations as true because it found them "unsupported and conclusory."  Ata's allegations, however, are not so conclusory as to be disregarded and, when they are accepted as true, entitle him to a hearing on equitable tolling.

Although many of the instances in the record of his past medical treatment occurred before incarceration, Ata specifically alleged that his petition was untimely "because he had been hospitalized on numerous occasions for paranoid schizophrenia," and "because he has been and continues to be medicated by the Michigan Department of Corrections (MDOC) for paranoid schizophrenia and other psychoses."  Ata, thus, pointed to two specific ways – being hospitalized and medicated – in which his mental illness prevented him from understanding and complying with AEDPA's statute of limitations.  Further, Ata provided in his affidavit that "due to my mental incapacitation I did not understand the one-year limitation placed on *habeas* petitioners."[7]  Given the

---

[7]This averment is not particularly helpful as drafted, because "ignorance of the law alone is not sufficient to warrant equitable tolling."  *See Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)).  It is not clear whether Ata is explaining that he was

applicable *pro se* standard, we read Ata's allegations to state that he was incapacitated for the period in question and that his incapacitation prevented him from timely filing his petition. While certainly not elaborate, Ata's allegations are specific enough to assert a causal link between his mental incompetence and his untimely petition. *See McSwain*, 287 F. App'x. at 456 (finding allegation of causal link required); *Riva*, 615 F.3d at 40; *Bolarinwa*, 593 F.3d at 231-32; *Nara*, 264 F.3d at 320; *Laws*, 351 F.3d at 923; *Hunter*, 587 F.3d at 1309-10.

*McSwain*, which upheld the denial of an evidentiary hearing, is distinguishable from the present case. There, we determined that the prisoner "did not assert that she was prevented from timely filing either her habeas petition or her response to the motion to dismiss because of her mental illness." 287 F. App'x at 458. Unlike Ata's allegations, McSwain "merely indicated that because she has been suffering from [Dissociative Identity Disorder] since childhood, she 'likely suffers periods of incompetency which would effect [sic] her ability to file a timely habeas petition.'" *Id.* McSwain's assertion of "likely" periods of incompetence that "would" affect her ability to timely file were too speculative. Thus, the allegations in *McSwain* undermined the existence of a causal link between her mental incompetency and untimely filing. On the other hand, Ata's allegations that he *was* mentally incompetent and that his mental incompetence *did* prevent him from timely filing are concrete.

Other circuits have found allegations similar to those in this case to warrant an evidentiary hearing. For instance, in *Bolarinwa*, the Second Circuit concluded that similar causal allegations, supported by a record of mental incapacity, called for an evidentiary hearing to resolve a petitioner's equitable tolling claim. *See* 593 F.3d at 229-30, 232. The petitioner, Bolarinwa, asserted that she "was mentally incapable of functioning to do diligence in regard to legal remedy in a timely fashion'"; "her psychiatric problems made it impossible for her to timely file habeas corpus petition"; "she was 'depressed, anxious, and grieving'"; "that her 'mental condition, aggravated by the tragic death of her three children, father and grandfather, burdened her efforts to

merely ignorant of the law or whether his mental incapacity prevented him from being able to comprehend the substance or applicability of the law. A hearing will permit the district court to explore this issue.

file her habeas petition'"; and that she was admitted to psychiatric units "on occasion" or "at various times." *Id.* at 229-30. Bolarinwa also submitted a letter from a prison social worker indicating that Bolarinwa "had been 'trying to become mentally stable' and that 'the tragic death of her children . . . made it difficult for her to focus on filing a habeas petition.'" *Id.* at 230.

Similarly, the Ninth Circuit, in *Laws v. Lamarque*, found that the petitioner had "made a good-faith allegation" – specifically, "Laws's 'psychotic d[y]sfunction' precluded his timely filing" – "that would, if true, entitle him to equitable tolling[.]" 351 F.3d at 921-22. It thus reversed the dismissal of the petition and remanded for further factual development. *Id.* at 924; *see also Mendoza v. Carey*, 449 F.3d 1065, 1069, 1071 (9th Cir. 2006) (finding that petitioner had alleged facts – including "that lack of access to Spanish-language legal materials prevented him from learning about the AEDPA's deadline and thereby prevented his timely filing" – which, if true, could entitle him to equitable tolling and remanding for an evidentiary hearing on the tolling claim).

As in *Bolarinwa* and *Laws*, the allegations here are sufficiently specific to satisfy the first step of our test to determine when an evidentiary hearing is warranted.

**2. Ata's Allegations Are Consistent With the Record**

The second step of our analysis requires a review of the record to ensure it does not refute Ata's request for equitable tolling. *See Schriro*, 550 U.S. at 474, *McSwain*, 287 F. App'x at 457.

Here, the record indicates a long history of mental illness. Medical records, admitted during the state court proceedings, reveal the existence and severity of Ata's mental illness even prior to his criminal offense. Moreover, the record contains no information inconsistent with Ata's claims of mental incompetency in the years between the end of his direct review and the initiation of his collateral review. If anything, the record corroborates Ata's allegations of mental incompetence preventing timely filing, as Ata's diagnosis of paranoid schizophrenia presents a lifelong condition with an accompanying regimen of medication. Moreover, the fact that Ata sought direct review

of his conviction does not support an inference that his mental incompetence was cured; he was represented by counsel at the time. *Cf. McSwain*, 287 F. App'x at 457. Thus, Ata's allegations contain sufficient support in the record.[8]

## IV. Conclusion

It is not clear whether Ata will meet his burden to demonstrate his entitlement to equitable tolling or whether Ata will ever prevail on his habeas petition. However, Ata's motion for equitable tolling alleged sufficient specific facts and allegations of causation to justify further inquiry in an evidentiary hearing. Therefore, we vacate the district court's dismissal of Ata's habeas petition and remand this case for an evidentiary hearing on his motion for equitable tolling.

---

[8]We are mindful that the Supreme Court requires more than an "extraordinary circumstance" that "prevented timely filing" for a petitioner to be entitled to equitable tolling. *See Holland*, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). It requires petitioners to demonstrate diligent pursuit of their rights. *Id.*

Here, in the affidavit attached to his motion for equitable tolling, Ata stated that "I have made every attempt known to me and my reasoning and understanding to facilitate any appeals before any court and to diligently prepare my appeal. I have not forsook any opportunity to present my appeal." Thus, Ata has set forth the basis for his claim of reasonable diligence in filing his petition.