**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0723n.06

No. 14-2363

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 29, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JAMES EDWARD KITCHEN, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| CATHERINE S. BAUMAN, Warden, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; and DRAIN, District Judge.[*]

GRIFFIN, Circuit Judge.

Petitioner James Edward Kitchen appeals the denial of his habeas petition claiming that the district court erred in denying his request for an evidentiary hearing and ruling that his petition was barred by the one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). We affirm.

I.

In 2004, petitioner Kitchen was charged with four counts of first-degree criminal sexual conduct involving a victim under the age of thirteen years old, Mich. Comp. Laws § 750.520b(1)(a). Before trial, the Michigan state court found Kitchen incompetent and

---

[*]The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

remanded him to the Center for Forensic Psychiatry for treatment. The basis for the incompetency finding was petitioner's delusional belief that he was the rightful owner of the state of Michigan. After fourteen months of treatment, Kitchen was discharged from the Center with instructions to remain on his prescribed medications. The state court subsequently found petitioner competent to stand trial, and he was thereafter convicted as charged. *See People v. Kitchen*, No. 267045, 2007 WL 750380, at *1 (Mich. Ct. App. Mar. 13, 2007). Kitchen appealed to the Michigan Court of Appeals, which affirmed his convictions on March 13, 2007. *Id*. After the time for appealing to the Michigan Supreme Court expired without Kitchen filing an application for leave to appeal, his convictions became final on May 9, 2007.

In October 2007, petitioner filed a *pro se* action in federal district court entitled "Writ of Release in Pursuance of Lack of Subject Matter Jurisdiction Writ of Quo Warranto to Vacate Void Judgment." In substance, Kitchen requested the court to declare his convictions and sentences void under Federal Rule of Civil Procedure 60(b)(4), claiming that the attorneys and judges involved in his state criminal proceedings were foreign agents who had no jurisdiction to convict him. The magistrate judge issued a report and recommendation that the action be dismissed for failure to state a claim. Kitchen filed objections, but the district court adopted the magistrate's recommendation. Kitchen then timely, but unsuccessfully, appealed to this court, *Kitchen v. Michigan*, No. 08-2094 (6th Cir. April 30, 2009), and the United States Supreme Court, *Kitchen v. Michigan*, 558 U.S. 1028 (2009).

In June 2011, with assistance of counsel, Kitchen filed a motion for relief from judgment in state court. The trial court denied the motion, and both the Michigan Court of Appeals and Michigan Supreme Court denied his applications for leave to appeal. *People v. Kitchen*, No. 308897 (Mich. Ct. App. Nov. 8, 2012); *People v. Kitchen*, 832 N.W.2d 229 (Mich. 2013). Also

during this time, Kitchen filed several Uniform Commercial Code filings with the Michigan Department of State in 2006, 2009, and 2012 relating to a land grant patent that petitioner believed supported his claim that he was a sovereign prince.

Finally, on April 7, 2014, again with the assistance of counsel, petitioner filed this habeas petition. The magistrate judge issued a report recommending denial of the petition on the grounds that it was barred by the one-year statute of limitations. In objecting to the recommendation, Kitchen conceded that he filed his petition outside the one-year time-frame, but claimed that he was entitled to equitable tolling of the statute of limitations based on his mental incompetency. He also requested an evidentiary hearing.

The district court adopted the magistrate's report and recommendation over petitioner's objection. The court found that Kitchen failed to meet his burden for establishing that he was mentally incompetent because he failed to allege that he stopped taking the medication necessary to maintain his competency. The district court observed that Kitchen made unspecific, and at times conflicting, claims about his medicated status while in prison. The court further found that Kitchen's unspecific allegations of mental incompetency made it difficult to evaluate whether his purported mental incompetency caused him to file an untimely habeas petition. The district court also denied Kitchen's request for an evidentiary hearing, ruling that such a hearing was unnecessary given petitioner's unfounded allegations of mental incompetency. However, the district court granted a certificate of appealability regarding the issue of equitable tolling.

Thereafter, petitioner filed a motion to alter the judgment, Fed. R. Civ. P. 59(e), or for relief from judgment, Fed. R. Civ. P. 60(b), claiming that an inadvertent drafting error in his objections to the report and recommendation misled the court. Kitchen clarified that he had not received any psychiatric medication during his time in prison. Kitchen attached two mental

health evaluations conducted by prison officials when he arrived at prison, one of which concluded that "[petitioner] does not have signs and symptoms of major mental illness" and that "[petitioner] does not require psychiatric treatment." He also provided a personal affidavit averring that he received no medication while in prison and an affidavit from his attorney stating that petitioner's prison medical file contained no records regarding mental health treatment.

The district court denied the motion. The court found that, although Kitchen provided support for his assertion that he did not receive medication while in prison, the evidence he provided on reconsideration established that he was mentally stable and aware of his legal options when he arrived at the prison in December 2005. Thus, the district court concluded that Kitchen failed to show he was mentally incompetent during the limitations period. Further, the court reaffirmed its decisions to deny an evidentiary hearing, but granted a certificate of appealability on the issue. Kitchen timely appeals.

## II.

"[W]e review *de novo* the decision of the district court to deny equitable tolling as a matter of law or where the facts are undisputed, [but] 'in all other cases, we apply the abuse of discretion standard.'" *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Dunlap v. United States*, 250 F.3d 1001, 1007 & n.2 (6th Cir. 2001)). We review a district court's decision to deny an evidentiary hearing for an abuse of discretion. *Id.*

The habeas petition at issue is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a petitioner is required to file his habeas petition within one year of the date that his time for direct appeal expired.[1] 28 U.S.C. § 2244(d)(1)(A).

---

[1] Although AEDPA provides four possible dates that trigger the statute of limitations period, *see* 28 U.S.C. § 2244(d)(1)(A)–(B), petitioner does not argue that another triggering date

Here, that time expired on May 9, 2007, giving petitioner until May 9, 2008, to file a federal habeas petition. Kitchen missed that deadline by nearly six years, not filing his habeas petition until April 7, 2014. On appeal, Kitchen concedes that he filed his petition after the one-year deadline, but contends that the district court erred in refusing to apply equitable tolling because of his mental incompetency.

To obtain equitable tolling based on mental incompetency, "a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Ata*, 662 F.3d at 742. However, equitable tolling should be applied "sparingly," *id*. at 741, and mental incompetency is not a *per se* reason to toll the statute of limitations. *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008). Rather, a petitioner must show "a causal link between the mental condition and untimely filing." *Ata*, 662 F.3d at 742. The burden of production and persuasion rests on the petitioner to show he or she is entitled to equitable tolling. *Id*. at 741.

To obtain equitable tolling in this case, petitioner must first demonstrate that he was mentally incompetent during the statute of limitations period. At the outset, we note that petitioner presented no evidence of his mental health status during the relevant time period, from May 9, 2007, to May 9, 2008. In fact, the evidence in the record—information regarding petitioner's prison medical file—tends to show that petitioner was not suffering from any mental illness during the limitations period. Instead of mental illness, petitioner's most recent mental health evaluations, on December 6 and 16, 2005, found petitioner was without "signs and symptoms of major mental illness" and that his "[m]ental status [was] stable at [that] time."

---

applies to his petition, nor does he contest the district court's conclusion that the statute of limitations began to run on May 9, 2007.

Petitioner argues that this evidence—or lack thereof—is actually evidence that he was mentally incompetent. Relying on the discharge instructions from his pretrial treatment that he should remain on his medications in order to maintain his competency, Kitchen argues that it is reasonable to infer that he became mentally incompetent because he stopped taking his medications in prison. The district court did not accept this inference, finding instead that the most recent evaluations of petitioner's mental health concluded that Kitchen was mentally stable and not in need of psychiatric treatment. On this record, we find no clear error in the district court's findings of fact or abuse of discretion in its rulings. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) ("Because the district court exercised its discretion and the facts are disputed, we review the district court's decision for abuse of discretion."). Petitioner's argument is based on speculation and conjecture, and it is entirely inferential. As Kitchen presented no medical evidence showing he was incompetent at any point after December 2005, he failed to carry his burden to demonstrate incompetency during the limitations period.[2]

Even if we were to accept that petitioner was mentally incompetent during the limitations period, petitioner failed to allege how his mental incompetency prevented him from filing a timely habeas petition. *See McSwain*, 287 F. App'x at 457 (upholding the denial of equitable tolling because, although the record supported the petitioner's assertion of mental illness, "it does not contain evidence to support a causal connection between her mental illness and her ability to file a timely federal habeas petition"). With respect to this requirement, petitioner claims that he suffered from mental incompetency before and during his criminal trial and that

---

[2]In this respect, we believe the dissent's contrary position is inconsistent with the requirement that petitioner bear the burden of showing mental incompetency. *See Ata*, 662 F.3d at 741.

that incompetency continued during the relevant tolling period. This claim is contradicted by the record, which shows that petitioner was declared competent to stand trial months before he was tried, and that competency was confirmed one week before trial. Thus, there is no factual basis in the record to claim that petitioner's delusions hindered his ability to assist his trial counsel.[3] And with that factual premise removed, petitioner's argument for a "causal link" fails. Petitioner's argument is also inconsistent with his theory that it was the prison officials' decision to stop providing him medication that caused him to become mentally incompetent during the statute of limitations period. Kitchen was receiving medication in jail in the months leading up to trial. Thus, he cannot assert that he was mentally incompetent during that time without also undermining the underlying premise of his equitable tolling claim, which is that his medicated status has a direct bearing on his mental competency.

Moreover, during the relevant one-year time period, Kitchen was able to file a civil suit in federal court challenging his confinement. He stresses that the "quasi-legalistic ramblings" in these pleadings evidences his inability to file a habeas petition. But the relevant inquiry is whether petitioner's mental incompetency prevented him from filing a *timely* petition, not a meritorious one. *See Ata*, 662 F.3d at 742 ("[A] causal link between the mental condition and *untimely* filing is required.") (emphasis added). The fact that Kitchen was able to file a civil action in federal court challenging his confinement within the one-year limitations period demonstrates that any mental incompetency did not prevent him from pursuing his legal rights in a timely, albeit unsuccessful, manner. *See Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir.

---

[3]In fact, the evidence petitioner relies on for the fact that he was mentally incompetent before his criminal trial (the discharge summary from the Center for Forensic Psychiatry) instead establishes that his "beliefs had nothing to do with his charges" and that "[petitioner] was competent[;] he did not want to cooperate with the legal process."

2005) (disallowing equitable tolling where the habeas petitioner had pursued state court litigation even during the periods when her mental condition was the most impaired); *Price v. Lewis*, 119 F. App'x 725, 726–27 (6th Cir. 2005) (disallowing equitable tolling based on mental illness where the habeas petitioner had actively pursued his claims during the limitations period). Notably, petitioner was able to comply with the timing requirements during that litigation, filing timely objections to the magistrate's report and appealing the district court's adverse decision to this court and the Supreme Court. Thus, petitioner's litigation-related conduct undermines his argument that any mental incompetency made it impossible for him to file a timely habeas petition. Because Kitchen has failed to allege facts showing that his alleged incompetency caused him to not comply with the statute of limitations, we affirm the district court's decision to deny equitable tolling on the basis of mental incompetency.[4]

### III.

Kitchen alternatively argues that the district court erred in denying his request for an evidentiary hearing. As noted above, the decision to grant an evidentiary hearing rests in the sound discretion of the district court. *Ata*, 662 F.3d at 742. In evaluating a request for an evidentiary hearing, district courts must "determine if the factual allegations are sufficient to support equitable tolling and [must] review the state court record in order to establish whether

---

[4]In concluding to the contrary, the dissent asserts that "we must accept as true [petitioner's assertion] that his mental state deteriorated and his delusions stood in the way of his ability to adhere to the statutory deadline." We disagree for several reasons. First, petitioner's affidavit contained no allegations that his mental health deteriorated or that any mental incompetency prevented him from timely filing. Second, petitioner's assertion in his briefing that the same incompetency that afflicted him during his criminal trial continued during the tolling period is contradicted by record evidence that he was, in fact, found competent shortly before trial, as well as evidence that his "beliefs had nothing to do with his charges." Thus, there is no record support for the claim that any purported mental incompetency made it impossible for him to file an untimely habeas petition.

petitioner's assertions are refuted by the record or otherwise without merit." *Id.* A petitioner is entitled to an evidentiary hearing if the "allegations, accepted as true, show that he is mentally incompetent and that his mental incompetence prevented him from timely filing his petition." *Id.* at 743 (citing *McSwain*, 287 F. App'x at 458).

For the same reason the district court did not err in denying Kitchen equitable tolling, it did not err in denying his request for an evidentiary hearing. Petitioner has not alleged facts showing that his purported mental incompetency caused him to file an untimely habeas petition. Also, the evidence in the record does not support his claim. Kitchen has failed to make a threshold showing of how and why an evidentiary hearing could change the decision of the district court. *See Williams v. Bagley*, 380 F.3d 932, 977 (6th Cir. 2004) ("[T]he district court did not abuse its discretion in denying [the petitioner's] request [for an evidentiary hearing], given his failure to specify . . . what could be discovered through an evidentiary hearing."); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing."). On this record, an evidentiary hearing would be a futile exercise and a waste of valuable judicial resources. Because the facts existing on the record, taken as true, do not state a viable claim for equitable tolling, the district court did not abuse its discretion in denying petitioner's request for an evidentiary hearing. *Ata*, 662 F.3d at 742.

## IV.

For these reasons, we affirm the district court's judgment.

DRAIN, District Judge, Dissenting.

I respectfully dissent from the majority opinion because further development of the record is necessary before resolving the issue of equitable tolling. The district court abused its discretion by assessing the evidence and finding, as the majority states, "that Kitchen was mentally stable and not in need of psychiatric treatment." *Ante*, at 6. To the contrary, there is evidence in the record showing that medical professionals found Mr. Kitchen had a mental illness that could have stood in his way of filing a timely habeas petition. Therefore, I dissent from Part II of the majority's opinion because further discovery on this record is needed.

With respect to Part III of the majority opinion, the majority is correct that this Circuit requires us to accept Mr. Kitchen's allegations as true. Accordingly, the majority's position that "an evidentiary hearing would be a futile exercise and a waste of valuable judicial resources" is inapplicable in light of Mr. Kitchen's sufficiently specific allegation of incompetency that is consistent with the record. The majority refuses to draw the slightest inference in Kitchen's favor. Because we appear to be heightening the standard, I also dissent from Part III of the majority's opinion and its reasoning behind the denial of an evidentiary hearing.

I.

In denying equitable tolling, the majority states that "[p]etitioner's argument is based on speculation and conjecture." *Ante*, at 6. However, the district court reached its conclusion regarding Kitchen's mental health status based on what can only be considered "speculation and conjecture" after reviewing a record the majority itself states contained "no evidence of [Kitchen's] mental health status during the relevant time period[.]" *Id* at 5.

According to the majority, the district court found "that the most recent evaluation of petitioner's mental health concluded that Kitchen was mentally stable and not in need of

psychiatric treatment." *Ante*, at 6. Specifically, however, the district court found that "two [Michigan Department of Corrections ('MDOC')] medical reports confirm that[,] since at least December of 2005[,] Petitioner has been competent and was otherwise cognizant of his legal options." As discussed below, the district court's actual finding was clearly erroneous.

The MDOC medical report relied upon by the district court was a one-time determination in 2005 that indicated "*[a]t the present*, Mr. Kitchen does not require psychiatric treatment." (emphasis added). Contrary to the district court's finding, this one-time determination on December 16, 2005, that "[p]sychiatric treatment is not required," did not "*confirm* that *since at least December of 2005* Petitioner has been competent[.]" (emphases added). To the contrary, nothing in the record *confirms* that Kitchen has been competent since at least December of 2005.

The district court's finding was erroneous, because we actually "do not know whether [Kitchen's] mental condition had deteriorated since his" incarceration with the MDOC, "such that he fell below a minimum standard of legal competence." *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) (citing *Godinez v. Moran,* 509 U.S. 389, 399 n.10, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), and *Massey v. Moore,* 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954)). The one-time December 16, 2005 finding by the MDOC had little bearing, if any, on Kitchen's competence during the relevant tolling period two years later; a period for which the majority states there has been no evidence of Kitchen's mental health status during the relevant time period. *Cf. id.* ("Laws was adjudicated competent to stand trial in 1993, notwithstanding evidence of serious mental illness. But that determination has little bearing on his competence *vel non* during the period 1996–2000, a period for which no medical records have been offered by either Laws or the respondent."). Thus, the district court necessarily had to speculate to reach its conclusion that petitioner has been competent since at least December of 2005.

This is troubling because to reach the district court's conclusion one has to discount a thorough and comprehensive medical report that was conducted by Kitchen's treating psychiatrist of fourteen months who deemed him competent to stand trial. The report is critical as it provided a regimen of medication and treatment in order for Kitchen to remain competent. "In order to maintain competency," Kitchen's psychiatrist indicated "[Kitchen] will need to stay on the Risperdal and Clonopin." The psychiatrist also indicated that Kitchen's thyroid function would need to be monitored because it "will be crucial for . . . maintaining competency." It is undisputed that none of this happened. Indeed, the district court found that Kitchen supported "the assertion that he has not received medication or treatment since November 2005[.]"

Thus, the district court abused its discretion by erroneously assessing the evidence to conclude Kitchen has been competent since December of 2005 despite evidence showing a direct correlation between Kitchen's mental health and medicated status. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748, 188 L. Ed. 2d 829 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), to state: "A district court would necessarily abuse its discretion if it based its ruling on . . . a clearly erroneous assessment of the evidence."); *see also Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (Griffin, J.) (citing *United States v. Baker,* 458 F.3d 513, 516 (6th Cir. 2006), to state "it is an abuse of discretion to make errors of law or *clear errors of factual determination.*") (emphasis added) (internal quotation marks and citation omitted).

Notwithstanding the district court's abuse of discretion, the majority takes the position that "[e]ven if we were to accept that petitioner was mentally incompetent during the limitations period, petitioner failed to allege how his mental incompetency prevented him from filing a timely habeas petition." *Ante*, at 6 (citing *McSwain*, 287 F. App'x at 457). To reach this

conclusion, the majority disregards the "claims that [Kitchen] suffered from mental incompetency before and during his criminal trial and that incompetency continued during the relevant tolling period." *Id.* at 7. However, as the majority states, "the relevant inquiry is whether petitioner's mental incompetency prevented him from filing a *timely* petition[.]" *Id.* (citing *Ata*, 662 F.3d at 742). Kitchen makes this showing through his allegations.

The majority emphasizes "the fact that Kitchen was able to file a civil action in federal court challenging his confinement within the one year limitations period demonstrates that *any mental incompetency* did not prevent him from pursuing his legal rights in a timely, albeit unsuccessful, manner." *Ante*, at 7–8 (citing, *inter alia*, *Price v. Lewis*, 119 F. App'x 725, 726–37 (6th Cir. 2005)) (emphasis added). However, because the record indicates that Kitchen was diagnosed with a mental illness that has a direct bearing on his ability to timely pursue his rights, I respectfully disagree with the majority's conclusion that he has failed to allege how his mental incompetency prevented him from pursuing his legal rights in a timely manner.

In *Price v. Lewis*, this Circuit noted that "[t]he exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity." 119 F. App'x at 726. Here, Petitioner has alleged that he was unable to timely pursue his legal claims during the period of his alleged mental incapacity because his mental delusions stood in his way and made it impossible for him to timely file a habeas petition. It is Kitchen's ability to file a habeas petition that is at issue; not his general ability to file miscellaneous civil actions in federal court. *Cf. Ante*, at 7–8. I disagree with the majority because Kitchen's ability to vaguely understand his substantive legal claims is a far cry from his ability to procedurally pursue his legal claims given his delusions.

A petitioner's knowledge of the legal basis of his claims is not the same as knowledge and comprehension of the procedural steps that must be complied with in order to get a hearing on the merits. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1149 (9th Cir. 2000) (Tashima, Trott, and Berzon, JJ., concurring) ("The fact that, like a broken clock, a petitioner . . . may [] be timely occasionally is not pertinent to determining whether there is an 'impediment' . . . or an 'extraordinary circumstance[.]'"  Indeed, incompetency may hinder the ability "to learn and be guided by such critically important procedural rules as the governing limitations period.").

The record here can serve as an example of the dangers of conflating these two concepts. Indeed, as the majority notes, in October of 2007, petitioner filed a *pro se* action in federal district court entitled, "Writ of Release in Pursuance of Lack of Subject Matter Jurisdiction Writ of Quo Warranto to Vacate Void Judgment."  This filing clearly had the thrust of a habeas petition so the magistrate judge properly informed Kitchen that he was required to file a petition for a writ of habeas corpus.  Another panel of this Circuit told Kitchen the same thing. Notwithstanding this advice, Kitchen unsuccessfully appealed to the Supreme Court until his family retained counsel on his behalf.

While the majority may disagree, Kitchen's "Writ of Quo Warranto" and other "quasi-legalistic ramblings" do evidence his inability to file a habeas petition.  Kitchen was *told* to file a habeas petition, but his delusions—that he was a sovereign prince regent exempt from state authority and that all lawyers (including the judges who instructed him what to do) were "unregistered foreign agents"—stood in the way of taking that advice.  Thus, Kitchen has made a specific allegation that, once in MDOC custody without his medication, his mental state deteriorated and stood in the way of being able to timely pursue his legal claims.  After all, these

quasi-legalistic ramblings contain the same delusional beliefs that lead the treating psychiatrist to conclude that it was necessary for Kitchen to remain medicated in order to remain competent.

The district court erroneously concluded that Kitchen has *definitely* been competent since 2005. At such an early stage in the litigation, this finding foreclosed any development of the record. Thus, with no *medical* evidence of Kitchen's mental health status during the relevant time period, this panel is now left to debate conclusions made by judges and lawyers—not medical professionals. This has led to unsupported conclusions that "the evidence in the record . . . tends to show that petitioner was not suffering from any mental illness during the limitations period[,]"[1] and Kitchen's "competency was confirmed one week before trial."[2] These findings

---

[1] This majority finding is contrary to the record, which indicates multiple times that Kitchen was diagnosed with "Delusional Disorder, Paranoid Type; Anxiety Disorder, NOS[.]" Moreover, it is hard to square this with the fact that, at oral argument, the government effectively conceded that Mr. Kitchen had a mental illness. This led the government's attorney to argue that "mental illness is necessary for incompetence but not sufficient" before arguing that he would "have to imagine" that Kitchen was competent during the relevant tolling period because the MDOC said so. We do not "have to imagine" Kitchen was competent; that is what the district court did. Instead, as discussed below, I would remand to the district court for appropriate development of the record with actual medical input regarding the relevant tolling period.

[2] This judge's finding that Kitchen was competent to stand trial in the middle of 2005, while Kitchen was on medication to keep him competent, has no bearing on whether Kitchen was competent years later during the tolling period. *Cf. Laws*, 351 F.3d at 923. The majority's assertions that Kitchen "was competent[;] he did not want to cooperate with the legal process," *ante*, at 7 n.2, came from a social worker; not a psychiatrist. The actual findings from the psychiatrist noted that "when [Kitchen] was taken off med watch, he appeared to deteriorate and was put back on med watch," and that Kitchen's "prognosis is essentially poor because of the longstanding nature of [his delusions.]" To be clear, there is no smoking gun showing that Kitchen was definitely incompetent. *Cf. Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) ("There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one . . . [a]s suggested by the varying opinions trained psychiatrists can entertain on the same facts."). However, a prior medical opinion on competence to stand trial saying that a petitioner needs to remain on drugs, and a finding that he wasn't on drugs, should be sufficient.

are not ours to make. *Cf. Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622–23 (6th Cir. 2006) ("We are not medical specialists and that judgment is not ours to make.").

Instead, the appropriate approach for this panel would be to vacate the decision below and remand for appropriate development of the record. *See Price*, 119 F. App'x at 727 (Aldrich, D.J., dissenting) ("Tradition, bolstered by sound principles of deference and institutional competency, has made it axiomatic *that district courts* are best suited to the resolution of fact-intensive issues, such as the potential applicability of equitable tolling.") (emphasis added). The record is simply too inadequate to permit the lower court, or this court, to evaluate the strength of Kitchen's claim because there are critical unanswered questions regarding the medical data and mental state of Kitchen during the relevant tolling period. *Cf. Metro. Life*, 473 F.3d at 623 (remanding and noting that the parties "would be well advised to pursue appropriate medical data relating [to the Appellant's] undeniable medical limitations[.]").

Remanding to the district court for appropriate development of the record is the "sound approach[.]" *Price*, 119 F. App'x at 727 (Aldrich, D.J., dissenting) (referencing *Whalem/Hunt*, 233 F.3d at 1148; *United States v. Battles*, 362 F.3d 1195, 1199 (9th Cir. 2004); *Molina v. United States*, 27 Fed. App'x. 796, 797 (9th Cir. 2001)). For example, in *Riva v. Ficco*, the First Circuit remanded a case "for further development of the record with a view toward determining whether the petitioner's mental illness so severely impaired his ability effectively to pursue legal relief." 615 F.3d 35, 44 (1st Cir. 2010). They did so because in that "complex case, in which various pieces of evidence point in different directions[,]" the petitioner who was diagnosed with a personality disorder claimed "he lacked the sanity necessary to consistently and effectively pursue his legal rights." *Id.* at 44. The First Circuit remanded the case and noted that the district court "failed to consider relevant factors such as the content and quality of the petitioner's court

filings" and that these "difficulties, in combination, counsel against a finding that the district court acted within the encincture of its discretion in rejecting the petitioner's claim of equitable tolling." *Id.* Similarly, here, various pieces of evidence point in different directions, petitioner was diagnosed with Paranoid Delusional Disorder as well as an Anxiety Disorder NOS, and the district court failed to consider relevant factors such as the content of petitioner's court findings.

In *Hunter v. Ferrell*, the Eleventh Circuit found that the petitioner's claims merited "further investigation and factual development of the record[.]" 587 F.3d 1304, 1309 (11th Cir. 2009). In that case, a doctor said that the petitioner's mental retardation was significant and irreversible, such that the doctors report remained "probative of [petitioner's] mental impairment as to the § 2254 petition during the limitations period and beyond to 2008." *Id.* The Court found that the state had offered "no evidence in response to [the petitioner's] averments that he is not able to manage his affairs, [and] he is not able to understand his legal rights or act upon them and his mental retardation prevented him from timely filing a § 2254 petition." Accordingly, the Eleventh Circuit concluded, at the summary judgment stage, that the petitioner's evidence, "while not sufficient to establish definitively that the filing deadline should be equitably tolled (at all or for how long), is sufficient to raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition[.]" *Id.*

Here, a psychiatrist indicated that "[i]n order to maintain competency, [Kitchen] will need to stay on the Risperdal and Clonopin," and Kitchen's thyroid function would need to be monitored because it "will be crucial for . . . maintaining competency." This forward-looking evaluation after fourteen months of treatment remains probative with respect to Kitchen's mental impairment as to the limitations period and beyond since even the district court found that Kitchen supported "the assertion that he has not received medication or treatment since

November 2005[.]"  Moreover, since the state presented no evidence in response to Kitchen's averments that he was not able to manage his affairs during the relevant tolling period, Kitchen's evidence was at least sufficient to show a causal connection exists between his mental impairment and his ability to file a timely habeas petition. *Cf. Hunter,* 587 F.3d at 1309–10.

The panel should follow the sound approach of vacating the judgment, and remanding to the district court for further development of the record.  *See Riva*, 615 F.3d at 44; *Hunter,* 587 F.3d at 1309–10; *see also Laws*, 351 F.3d at 924 ("[T]he district court erred in granting judgment against Laws based upon the papers then before it.  It is enough that Laws 'alleged mental incompetency,' in a verified pleading.  The district court should then have allowed discovery or ordered expansion of the factual record.  Laws's ability to file state and federal petitions in 2000 and thereafter through assistance by another inmate cannot substitute for development of the factual record concerning his mental state prior to that period.").  Instead, the panel has determined that Kitchen was competent despite medical evidence to the contrary.  For these reasons, I respectfully dissent from Part II of the majority's opinion.

## II.

Next, the majority states that "[f]or the same reason the district court did not err in denying Kitchen equitable tolling, it did not err in denying his request for an evidentiary hearing."  *Ante*, at 8.  Moreover, the majority contends that "[o]n this record, an evidentiary hearing would be a futile exercise and a waste of valuable judicial resources." *Id.* at 9.  As an initial matter, I reiterate that this panel should remand to the district court for further discovery because the district court is best suited to determine the course for further discovery, which may obviate the need for an evidentiary hearing.  *See Hunter*, 587 F.3d at 1310 (citing Rules Governing Section 2254 Cases 6, 7, & 8, in order to "leave to the district court's discretion how

best to develop the record."); *see also Laws*, 315 F.3d at 924 (same); *Valverde v. Stinson*, 224 F.3d 129, 135 (2d Cir. 2000) (same). Nonetheless, I respectfully disagree with the majority's reasoning behind its finding that no evidentiary hearing was required.

First, the majority concludes that Kitchen's allegations were not sufficiently specific, stating he "has not alleged facts showing that his purported mental incompetency caused him to file an untimely petition." *Ante*, at 8. However, Kitchen did point to a specific way in which his mental illness prevented him from complying with AEDPA's statute of limitations—his deteriorated mental state as a result of being unmedicated despite his diagnosis that he needed to remain medicated to remain competent. Accepting this claim as true, this allegation is sufficient. *Cf. Ata*, 662 F.3d at 743–44 (explaining that Ata's allegations, "[w]hile certainly not elaborate" were sufficient because they explained the causal link between the purported mental incompetence and the untimely petition); *id.* at 744 (citing *Bolarinwa*, 593 F.3d at 229–30, 32, for its concrete allegations, which were "supported by a record of mental incapacity[.]"); *id.* (quoting *Laws*, 351 F.3d at 921–22, to find its allegations were concrete because "the petitioner had 'made a good-faith allegation'—specifically, 'Laws's 'psychotic d[y]sfunction' precluded his timely filing'—'that would, if true, entitle him to equitable tolling[.]' ").

The majority then states "the evidence in the record does not support [Kitchen's] claim." *Ante*, at 9. However, there is nothing in the record that is inconsistent with Kitchen's claims of a deteriorated mental state during the relevant time period. If anything, the record corroborates Kitchen's allegations of mental incompetence preventing timely filing. Kitchen provided undisputed findings that he suffered from ongoing, if not consecutive, periods of persistent mental illness. He provided documents reflecting a history of mental illness, and a diagnosis of Paranoid Delusional and Anxiety Disorders to support his assertion that his mental state

-19-

deteriorated while in MDOC custody. He further provided a sworn affidavit, which states that he had "not been prescribed Risperdal or Clonopin," nor had any treatment while in the custody of the MDOC. Lastly, Kitchen provided a litany of documents that arguably indicate he was delusional and paranoid at the time relevant to tolling. Because his psychiatrist indicated that such treatment was necessary for Kitchen to maintain his competency, Kitchen's *pro se* filings lend credence to his assertion, *which we must accept as true*, that his mental state deteriorated and his delusions stood in the way of his ability to adhere to the statutory deadline.

Contrary to the majority's conclusion, Kitchen does not simply make bald assertions with no support in the record. Moreover, at the oral argument, Kitchen's attorney stated that an evidentiary hearing could permit the Court to receive actual medical input regarding Kitchen's mental state during the relevant tolling period. As described above, further discovery or an evidentiary hearing would certainly allow the district court to actually determine whether Kitchen has been competent since December of 2005 as opposed to speculating to reach that conclusion. If we accept Kitchen's allegations as true, Kitchen has made a sufficient showing.

The majority does not accept Kitchen's allegations as true as it refuses to draw the inference that Kitchen became incompetent after not being medicated. *Ante*, at 6 (suggesting that it is unreasonable "to infer that [Kitchen] became mentally incompetent because he stopped taking his medications in prison."). Moreover, the majority concludes that "an evidentiary hearing would be a futile exercise and a waste of valuable judicial resources." *Ante*, at 10. This is not a proper approach and simply heightens the standard for showing that one is entitled to an evidentiary hearing. *See Ata*, 662 F.3d at 741 (remanding the case even though it was "not clear whether Ata will meet his burden to demonstrate his entitlement to equitable tolling or whether Ata will ever prevail on his habeas petition."); *see also United States v. Battles,* 362 F.3d 1195,

1199 (9th Cir. 2004) (remanding for consideration of equitable tolling, although claim "may turn out to be a mere thread paper").

An evidentiary hearing on these facts is proper when there has been a showing "of ongoing, if not consecutive periods of mental incompetency." *Nara v. Frank,* 264 F.3d 310, 319–20 (3d Cir. 2001), *overruled in part on other grounds by Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (remanding to district court for evidentiary hearing where record indicated petitioner was mentally disabled and hospitalized several times, but there was "no evidence in the record" as to petitioner's condition during the time period sought to be tolled). Indeed, evidentiary "hearings may be especially useful when a 'limited record [has been] presented to the district court[.]" *Bolarinwa v. Williams,* 593 F.3d 226, 232 (2d Cir. 2010) (quoting *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002)).

Here, although it is not clear whether Kitchen will be able to demonstrate that he is entitled to equitable tolling, he has put forth specific and sufficient evidence of ongoing, if not consecutive, periods of mental incompetency. The record is not inconsistent with Kitchen's claims of mental incompetency during the relevant tolling period. This is particularly relevant since Kitchen's diagnosis of Paranoid Delusional Disorder as well as an Anxiety Disorder NOS required treatment and an accompanying regimen of medication that was not followed. *Cf. Ata*, 662 F.3d at 744. In sum, Kitchen presented a sufficiently specific allegation that, if taken as true, is consistent with the record. Accordingly, I respectfully dissent from the reasoning behind Part III of the majority's opinion as well.

## III.

In conclusion, the Supreme Court has indicated that dealing with questions of mental competency is "difficult" and that there are a "wide range of manifestations and subtle nuances []

implicated." *Drope*, 420 U.S. at 180, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). The Supreme Court has also indicated that the mental competency of defendants should be "viewed in [] context." *Id.* at 179, 95 S. Ct. 896. Because the district court failed to view this case in context, let alone consider the wide range of manifestations and subtle nuances that come with mental competency, I would at least vacate the judgment finding Kitchen is not entitled to equitable tolling, and remand to the district court for further discovery to determine if Kitchen is entitled to equitable tolling due to mental incompetence during the relevant tolling period. We should get appropriate medical input in this situation. Fortunately, these cases are to be evaluated on a case-by-case basis. *Ata*, 662 F.3d at 741 (quoting *Keenan v. Bagley,* 400 F.3d 417, 421 (6th Cir. 2005)). Future petitioners should not be held to the high standard to which the majority holds Mr. Kitchen today.

For the foregoing reasons, I respectfully dissent.